# Richmond.

## AMERICAN AGRICULTURAL CHEMICAL CO. v. KENNEDY & CRAWFORD.

### November 23, 1904.

1. CONTRACTS—*Mutuality.*—An unsealed contract for the sale of goods to be delivered in the future, signed by the proposed seller and buyer, but which contains a reservation on the part of the seller of the right to cancel at any time, is void for want of mutuality. Where the consideration of a contract is a promise for a promise, there must be absolute mutuality of engagement. Both parties must be bound, or neither is.
2. CONTRACTS—*Mutuality of Engagement—Tender of Performance.*—Where a contract for the sale of goods is void for want of mutuality in its inception, by reason of the vendor's reserving a right to cancel at any time, the subsequent offer of the vendor to deliver the goods which he had never bound himself to sell cannot impose a liability on the vendee. The vendee never having had the right to tender the price and compel the vendor to deliver the goods, the vendor cannot by his own act make it the duty of the vendee to receive them, nor impose any liability upon him. The vendee, in such case, does not make a continuing offer to purchase.

Error to a judgment of the Circuit Court of Augusta county, rendered in an action of assumpsit, wherein the plaintiff in error was the plaintiff, and the defendants in error were the defendants.

*Affirmed.*

The opinion states the case.

*J. R. Fishburne* and *J. A. Glasgow*, for the plaintiff in error.

*A. C. Braxton*, for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

The American Agricultural Chemical Company instituted its action of assumpsit against J. A. Kennedy and W. A. Crawford, partners doing business under the firm name of Kennedy & Crawford, to recover damages for the alleged breach of an agreement not under seal.

The plaintiff's cause of action, as set·forth in the third count of the declaration, the only count relied on, is as follows:

"The American Agricultural Chemical Company, a corporation complains of J. A. Kennedy and W. A. Crawford, partners doing business and trading under the firm name and style of Kennedy & Crawford, of a plea of trespass on the case in assumpsit, for this, to-wit:

3rd Count.   That heretofore, to-wit: on the 14th day of March, 1902, in consideration that the plaintiff, at the request of the defendants, would sell and furnish to the said defendants, certain fertilizer, at and for a reasonable compensation, hereinafter set out, defèndants undertook, and then and there promised and contracted in writing with the said plaintiff, in the words and figures following, to-wit:

*March 14, 1902.*

To MESSRS. KENNEDY & CRAWFORD,
            Staunton, Augusta County, Va.

We hereby agree to ship you under the conditions and stipulations hereinafter named, and subject to the approval of the Home Office, the following Fertilizers at prices and terms named below.

The terms and conditions of this contract are as follows, and the prices named below are net to us in 200-lb bags:

| No. of Tons. | Brands. | | | Price per 2,000 lbs. |
|---|---|---|---|---|
| 400 | Your brands | 2-10-5 | | $20 85 |
| to | " " | 2-8-5 | | 19 85 |
| 600 | " " | 2-8-2 | | 17 60 |
| | " " | 1-8-1 | | 14 60 |
| | " " | 1-8-2 | | 15 30 |
| | " " | 10-2 | | 12 65 |
| | " " | 14 | | 11 65 |
| | | 2-$\frac{1}{2}$-12 | | 21 00 |

Goods to be delivered by us free on board cars or steamer at Staunton, Va., in carload lots, and you are to pay freight on all shipments.

All goods ordered by you under this contract shall be settled for in full on July 1, 1902, in cash for spring, and December 1, 1902, for fall.

For cash payments made prior to July 1, 1902, interest will be allowed at the rate of seven (7) *per cent. per annum* from dates of payments to July 1, 1902.

All settlements are to be sent to us in full at the date named, and protest, demand for payment, and notice of non-payment of any notes that may have been endorsed by you and transferred to us, are hereby waived, and you also waive all homestead and other exemptions as to any obligations growing out of this contract.

It is also agreed that you will hold in trust and separate, for the settlement of our account, all of said goods unsold, and all currency, open accounts, notes, liens, mortgages, or other values received for goods sold.

This contract is subject to suspension in case of fire, accident to our works or other causes.

We have the right to ship said goods, or any part thereof, from any factory.

We reserve the right to cancel this contract at any time we may deem proper, but in the event of such cancellation the provisions of this contract shall govern the closing of all business begun thereunder.

This contract, written and printed, constitutes the entire agreement, and no verbal understanding will be recognized.

Executed in triplicate,

THE AMERICAN AGRICULTURAL CHEMICAL COMPANY,                                          WM. W. BAKER.

We hereby agree to take whatever fertilizers we may require for spring season 1902, not less than, as stated, tons with the privilege of taking more, if mutually agreeable, under above terms and conditions.

Name—KENNEDY & CRAWFORD.

The said plaintiff further avers that, although it, confiding in the said promises and undertakings and contract of the said defendants, as above set out, did procure and manufacture the brands of fertilizer as above set out in said contract, and did manufacture and procure and have stamped the sacks or bags to contain said fertilizer, and were, and continued, ready and prepared to furnish said fertilizer, as above set out, on the terms aforesaid, and were ready and willing so to do to the said defendants during the said spring of 1902, and the said fall of 1902, and during all that time tendered and offered to furnish the said defendants said brands of fertilizer, as set out, upon the terms aforesaid, of all of which the defendants during all that time had notice; yet the said defendants failed to designate

or order the brands of fertilizer which were to amount to at least four hundred tons according to their said promises, but on the contrary, refused and continued to refuse during the whole spring and the whole fall of 1902, to accept or order said fertilizer according to their promises, without any reasonable cause therefor whatever; the plaintiff in that behalf having performed in every particular the terms and conditions in manner and form, and at the time agreed upon in said contract, and was always ready and willing so to do, and the defendants wholly refused and neglected from the time of the making of said promises up to the present time to perform or carry out the said promises and the said defendants, not regarding their said promises and undertakings, conniving and intending to injure the said plaintiff in this behalf, did not, nor would then or at any other time designate the brands of fertilizer they desired, not to be less than four hundred tons, nor would accept said fertilizer of the said plaintiff, or pay to the said plaintiff, the said prices therefor, or any part thereof, but so to do the said defendants have hitherto wholly neglected and refused, and do still neglect and refuse, by reason of which last mentioned promises the plaintiff has wholly lost and been deprived of great gains and profits, which it might and otherwise would have derived from the manufacture and sale of said fertilizer, and has been damaged and injured in that it had prepared, procured and manufactured bags or sacks, stamped for the said defendants, which became worthless to said plaintiff, and wherefore the said plaintiff says that he has sustained damage by reason of the said several breaches of the said several promises and undertakings in the said several counts in this declaration above set out, to the amount of $1,500.00."

The defendants demurred to the declaration on several grounds, one of which was that the contract sued on was without consideration, and was therefore *nudum pactum.* This con-

tention is based upon that clause of the written agreement which provides that "We (the plaintiff) reserve the right to cancel this contract at any time we may deem proper, but in the event of such cancellation, the provisions of this contract shall govern the closing of all business begun thereunder."

The general rule of law is, and this seems to be conceded by the plaintiff company, that where the consideration for the promise of one party is the promise of the other party, there must be absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement. Both parties must be bound or neither is bound. 1 Parsons on Contracts, (7th Ed.) 448-452; Clark on Contracts, 165-171; *Southern Ry. Co.* v. *Wilcox, &c.* 98 Va. 222, 35 S. E. 355.

The plaintiff insists that the averments of its declaration takes this case out of the general rule, upon the ground that while the contract sued on may have lacked mutuality of obligation in its inception, yet that the plaintiff had performed and executed the contract on its part by manufacturing the fertilizer, putting in sacks and tendering it to the defendants, and that such performance cured any lack of mutuality in the contract in its inception and rendered it absolutely binding. Although the contract did not bind the plaintiff to furnish the fertilizer which the defendants agreed to purchase, yet if the defendants had actually received it, they would have been bound to pay for it; and this would be so, even if the agreement in question had never been entered into. But the defendants did not receive it. The offer of the plaintiff to deliver the fertilizer which it had never bound itself to sell could not make the defendants liable in damages for refusing to receive what they in legal contemplation had never agreed to purchase. The defendants never having had the right to compel the plaintiff to deliver the fertilizer, the plaintiff could not, by its own act, make it the duty of the defendants to receive it, nor impose any liability upon them.

The promise of the defendants to purchase from the plaintiff was not a continuing offer, which when accepted was mutually binding upon both parties, as was the case in most of the decisions cited and relied on by the plaintiff. In those cases, while one party was not bound when the proposition of the other was made, he afterwards, before the proposition was withdrawn, either did, or bound himself to do, the thing which was the condition of the others' promise.

In discussing this class of cases, Mr. Parsons, in his work on Contracts, p. 450, after stating the general rule, that a promise is not a good consideration for a promise unless there is an absolute mutuality of engagement, so that each party has the right at once to hold the other to a positive agreement, says: "This has been doubted, from the seeming want of mutuality, in many cases of contract. As where one promises to see another paid if he will sell goods to a third person, or promises to give a certain sum if another will deliver up certain documents or securities, or if he will forbear a demand or suspend legal proceedings, or the like. Here it is said the party making the promise is bound, while the other party is at liberty to do anything or nothing. But this is a mistake. The party making the promise is bound to nothing until the promisee, within a reasonable time, engages to do, or else does or begins to do, the thing which is the condition of the first promise. Until such engagement or such doing, the promisor may withdraw his promise, because there is no mutuality, and therefore no consideration for it. But after an engagement on the part of the promisee, which is sufficient to bind him, then the promisor is bound also, because there is now a promise for a promise, with entire mutuality of obligation. So if the promisee begins to do the thing in a way that binds him to complete it, here also is mutuality of obligation. But if without any promise, while the promisee does the thing required, then the promisor is bound upon another ground. The thing

done is itself a sufficient and a completed consideration; and the original promise to do something, if the other party would do something, is a continuing promise until the party does the thing required of him.

"A very large proportion of our most common contracts rest upon this principle. Thus in a contract of sale the proposed buyer says, I will give so much for these goods, and he may withdraw his offer before it is accepted, and if his withdrawal reaches the seller before the seller has accepted, the obligation of the buyer is extinguished; but if not withdrawn it remains a continuing offer for a reasonable time, and if accepted within this time, both parties are bound, as by a promise for a promise; there is entire mutuality of obligation. The buyer may tender the price and demand the goods, and the seller may tender the goods and demand the price." See also Clark on Contracts, to the same effect, pp. 168-171.

In this case the plaintiff made a proposition to sell, which the defendant accepted, but the plaintiff's offer left it optional with it whether or not it would sell. It did not bind itself to sell. The defendants made no continuing offer to purchase. Their engagement was to purchase upon the terms and conditions stated in the plaintiff's proposition to sell. As that proposition did not bind the plaintiff to sell, there was no consideration for the defendant's promise to purchase, and, as we have seen, neither party was bound at that time. The plaintiff, after that time, never did any act or made any promise which bound it to complete the contract. There never was a time when the defendants had the right to tender the price and demand the fertilizer. In the absence of such obligation on the part of the plaintiff, and of such right on the part of the defendants, there never was a binding engagement between the parties which a court of law would enforce.

The language of the Justice delivering the opinion of the

court in the case of *Storm* v. *U. S.*, 94 U. S. 76, 24 L. Ed. 42, does sustain the plaintiff's contention, but the contract involved in that case was under seal and imported a consideration. The question involved here was therefore not involved in that case, and the language used was wholly unnecessary to its decision and was therefore *obiter.* That *dictum* has never been cited or followed by the court which decided the case, so far as we can find, and is not in accord with the great weight of authority.

We are of opinion that the demurrer to the declaration, upon the ground discussed, was properly sustained by the Circuit Court, and that its judgment must be affirmed.

*Affirmed.*