# CHARLESTON

WHITE *et al.* v. McCULLAGH.

Submitted February 24, 1914.    Decided April 21, 1914.

1. CORPORATIONS—*Stock Subscription—Right to Enforce—Parties.*
    Persons, designated as syndicate managers, authorized to receive
    and manage funds subscribed pursuant to a joint adventure to form
    a syndicate for the purpose of underwriting the bonds of a corpora-
    tion to be thereafter formed for a specified lawful purpose, have such
    interest in the funds as entitles them to maintain an action against
    a defendant subscriber for his unpaid subscription.    (p. 162).

2. CONTRACTS—*Validity—Mutuality—Power to Terminate.*
    Power vested in the syndicate managers to terminate such syndi-
    cate agreement at any time, earlier than the time fixed by its terms,
    does not necessarily render the agreement void for want of mutual-
    ity.    (p. 163).

3. CORPORATIONS—*Stock Subscriptions—Remedies Against Subscriber.*
    A right given the syndicate managers to sell the interest of a
    defaulting subscriber, to which he is entitled under the terms of the
    syndicate agreement by virtue of his subscription, is not exclusive
    and does not barr a right of action.    (p. 164).

Error to Circuit Court, Ohio County.

Action by A. L. White and others, syndicate managers, etc.,
against B. J. McCullagh.    Judgment for defendant, and plain-
tiffs bring error.

*Reversed and Remanded.*

*Hubbard & Hubbard*, for plaintiffs in error.

*James W. Ewing*, for defendant in error.

WILLIAMS, JUDGE:

This writ of error was awarded, on petition of plaintiffs,
to a judgment against them by the circuit court of Ohio
county.    The suit is to recover twenty per cent. of a $5,000 sub-
scription by defendant to stock and bonds to be issued by a
corporation to be thereafter organized and to be known as
the "Tula Company", for the purpose of acquiring certain
iron ore and timber property in the Republic of Mexico,
owned by one Manuel L. Corcuera, on which one W. A.
Butchart of the city of Mexico held an option at the price of

$750,000, which he proposed to assign to the corporation. The capital stock of the corporation was to consist of one million dollars of six per cent. cumulative preferred stock and three million dollars common stock, and the corporation was to issue and secure by a first mortgage on its property, and also by a sinking fund to be provided out of proceeds of sales of timber as cut and manufactured from its property, a million dollars of six per cent. coupon bonds, to bear date January 1, 1908, payable in twenty-five years, and redeemable at par in numerical order in amounts of $50,000 on or before the 1st of January of each year after the year 1912. A considerable portion of the bonds were to be applied to the purchase price of the property. A syndicate agreement was entered into for the purpose of underwriting not less than $350,000 of the proposed bond issue. Subscriptions thereto were payable to the syndicate managers direct, or to their credit in certain designated banks. On receipt of any installment they were required to issue a certificate therefor to the subscriber showing the amount paid and the amount of bonds and stock it represented in the Tula Company. Each $900 paid by a subscriber entitled him to $1,000 of bonds, $1,000 of preferred stock and $1,000 of common stock of the corporation. Subscribers were to pay five per cent. of their subscriptions on demand of the syndicate managers, twenty per cent. on August 26th, 1907, and fifty per cent. at such periods as the syndicate managers might determine.

This proceeding was begun by notice of motion for judgment, under section 6, chapter 121, serial section 4726, Code 1913. A complete copy of the subscription contract, excepting the signatures of subscribers thereto, was annexed to the notice. The principal question for decision is: Have plaintiffs the right to maintain the action? Counsel for the defendant insist that the syndicate agreement shows no right of action in plaintiffs, that they are simply agents of the subscribers and are not entitled to sue. They also contend that the agreement is void for want of mutuality of obligation. By its terms plaintiffs are made syndicate managers, and they sue in that capacity. They are vested with sole discretion in the management of the syndicate affairs. The fifth article of the agreement reads as follows: "The Syndicate Managers

shall have the sole direction and management of the Syndicate affairs, moneys, bonds and stock, with full power and authority to represent and act for each of the Subscribers with reference to such subscription, having the same authority over such moneys, bonds and stock as though they were the absolute owners thereof, subject only to the provisions of this agreement.  They shall from time to time purchase and take up such bonds and stock at a price not exceeding ninety per cent. of the par value of such bonds, and shall cause the same to be sold at such prices as they may be able to obtain. Such bonds shall not be sold for less than ninety-eight per cent. of their par value without the consent of a majority in interest of the Subscribers, and such stock shall be sold at such prices.as may from time to time be determined by the Syndicate Managers.  They may borrow money upon their joint notes as Syndicate Managers, or otherwise pledge the liability of the Subscribers arising hereunder, or any property held by them by virtue of this agreement, and shall exercise full discretion and authority in the premises.  None of the Syndicate Managers shall be personally liable by reason of his conduct under this agreement, or with reference to any of such property, except for fraud; the want of good faith or the failure to exercise reasonable care and diligence.  And no Subscriber shall be held liable as a partner, or required to contribute more than the unpaid installments of his subscription hereto.''

The eleventh article provides that, in case of the death or resignation of a syndicate manager, or in case of his unfitness, in the judgment of the others, to perform his duties, the remaining ones may perform the duties alone, or may declare a vacancy and fill it, but ''their action in the premises to be subject to the control of a majority in interest of the subscribers.''  They are authorized by article six to charge their traveling expenses, counsel and brokerage fees, incurred either by themselves or their duly authorized agents, acting in good faith, in promoting the agreement, to the syndicate fund, and are given a joint commission of one per cent. on the par value of all bonds underwritten in accordance with the agreement. Being the proper custodians of the funds subscribed, the syndicate managers have the right to maintain an action to col-

lect unpaid subscriptions. "Where the subscription calls for payment to designated persons, the action upon the subscription may be brought by them; as for example where the paper provides for the payment to a committee, to a trustee, or to a treasurer." 37 Cyc. 502. *Davis* v. *Smith American Organ Co.* 117 Mass. 456; *Carr* v. *Bartlett,* 72 Me. 120; *Gittings* v. *Mayhew,* 6 Md. 113; *Chambers* v. *Calhoun,* 18 Pa. St. 13, 55 Am. Dec. 583.

The agreement constitutes a joint adventure and its consideration is the mutual promises of the contracting parties. 23 Cyc. 454; *Galt's Ex'r.* v. *Swain,* 9 Grat. 633; *King* v. *Barnes,* 109 N. Y. 267, 16 N. E. 332; *Alderton* v. *Williams,* (Mich.) 102 N. W. 753. Plaintiffs were authorized to incur personal liability on account of the syndicate in furtherance of the scheme, and they may have done so.

By the terms of the agreement it was to expire on the 31st December, 1908, but the syndicate managers were empowered to extend it not exceeding one year, or to terminate it at any earlier time than December 31, 1908. It is contended that this shows want of mutuality, that if one party to an agreement may terminate it the other may do so also, that the right is mutual. This is the general rule. *Oil Co.* v. *Oil Co.,* 47 W. Va. 84; *Amer. Agr. Co.* v. *Kennedy,* 103 Va. 171, 48 S. E. 868; and *Hinton Foundry &c. Co.* v. *Lilly Lumber Co.,* 73 W. Va. 477, 80 S. E. 773. But this case is an exception, for the right of termination was not given to the plaintiffs to be exercised for their own benefit or protection, but for the benefit of the underwriters, for whom they are acting in a fiduciary capacity. The syndicate managers have full supervision and control over the sale and distribution of bonds, and are entitled to a brokerage fee of five per cent. on all bonds, placed directly by them, and three per cent. on all bonds placed by others, and to a fee of five per cent. on the net proceeds of all sales of stock made by them. They are authorized to purchase bonds and stocks from the company at ninety per cent. and resell them at such price as they may be able to obtain, but at not less than ninety-eight per cent. of their par value, unless by consent of a majority in interest of the subscribers. A year and a half seems to have been considered as a sufficient time to conduct those transactions, but if it developed in

a shorter time that the company's property would earn for the investors large profits they would likely wish to take over a large proportion of the securities themselves, rather than have them sold on the stock markets at less than their apparent value. And the syndicate managers were, therefore, given the power to terminate the sales in the interest of the subscribers. We do not see how the syndicate managers themselves could profit by putting an end to the agreement. They were entitled to large brokerage fees on all sales of securities and would apparently derive a benefit by prolonging the agreement.

The language of article eight of the contract which provides that, "if any Subscriber shall fail to make any payment as herein required, the Syndicate Managers may dispose of the right of participation accruing to such Subscriber: and the net proceeds thereof shall then constitute the sole interest of such defaulting Subscriber under this agreement," is not an exclusive remedy against a defaulting subscriber. It does not deny the right of suit.

The judgment is reversed and the cause remanded for further proceedings.

*Reversed and Remanded.*