UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1060

JAYSON HARRIS SCHWAM,

Plaintiff - Appellant,

versus

XO COMMUNICATIONS, INCORPORATED,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Gerald Bruce Lee, District Judge. (CA-04-351-1)

Argued: February 2, 2006                 Decided: March 24, 2006

Before WILKINS, Chief Judge, and NIEMEYER and WILLIAMS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Robert J. McManus, KILE, GOEKJIAN, REED & MCMANUS, Washington, D.C., for Appellant. Daniel Paul Westman, MORRISON & FOERSTER, L.L.P., McLean, Virginia, for Appellee. **ON BRIEF:** Scott W. Houtteman, KILE, GOEKJIAN, REED & MCMANUS, Washington, D.C., for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Jayson Schwam appeals the grant of summary judgment to XO Communications, Inc. in his suit to recover post-termination commissions. For the following reasons, we affirm.

I.

In April 2001, XO Communications, a nationwide provider of telecommunications services located in Virginia, hired Schwam, a Maryland resident, as a salesperson. Schwam remained with XO from April 2001 until he was terminated on January 16, 2004. Schwam, an at-will employee, was paid a base salary plus commissions generated from his sales. During his employment with XO, Schwam signed the Acknowledgment Form accompanying XO's Sales Incentive Plan (SIP), which governed how his commissions were calculated and paid. In the SIP, XO reserved the right to "amend, modify, interpret, or terminate the [SIP] at any time." (J.A. at 122.) The SIP also stated that "nothing in this Plan nor anything in it is intended to create or shall be construed to create or imply the existence of an employment contract, employment for a specific term, or a guarantee of employment or job classification between XO Communications and [Schwam]." (J.A. at 137.) The SIP further stated that "[u]pon any termination of employment . . . compensation will be based upon the employee's last day of work. A terminated employee will be considered terminated, for the purposes of calculating sales

2

incentive compensation, on the last day worked . . . ." (J.A. at 134.)

In November 2001, XO assigned Schwam to their Federal Group hoping that Schwam could boost sales to the federal government. Two years later Schwam assumed a business development role in the Federal Group. As a result of Schwam's participation in the Federal Group, XO secured contracts with the U.S. Department of Transportation (DOT), the Transportation Security Administration (TSA), and the Environmental Protection Agency (EPA). In 2003, XO was also approved by the GSA to provide telecommunications services to the federal sector.

Sometime in late 2003 or early 2004, XO decided to eliminate the Federal Group and it terminated Schwam's employment on January 16, 2004. XO offered Schwam a severance package, which Schwam rejected. Schwam then initiated the present action seeking the recovery of post-termination commissions generated by the contracts he procured with the federal government. Schwam presented claims for breach of written contract for the failure to pay him $17,003.00 for the TSA contract, breach of an oral contract to pay additional commissions of $17,109.55, and breach of an oral contract to pay other commissions of $71,400.00. Schwam also set forth a claim for unjust enrichment.[1]

---

[1]Schwam also alleged a claim of promissory estoppel, but he withdrew this claim.

Following a hearing, the district court granted XO's motion for summary judgment on the unjust enrichment claim and the first and third breach of contract claims. The district court then dismissed Schwam's second breach of contract claim for lack of subject matter jurisdiction because Schwam only sought $17,109.55 under that claim. On appeal, Schwam contends only that the district court erred in granting summary judgment to XO on the unjust enrichment claim and on the third breach of contract claim.[2] We have jurisdiction to review this diversity case under 28 U.S.C.A. §§ 1332 and 1291 (West 1993 & Supp. 2005).

II.

We review de novo "an award of summary judgment, viewing the facts and inferences drawn therefrom in the light most favorable to the non-moving party." EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir. 2005). "Such an award is appropriate only if

---

[2]In the concluding paragraph of Schwam's opening brief, he requests that we vacate the dismissal of the second breach of contract claim. Appellant Br. at 30 ("For the foregoing reasons, it is respectfully requested that this Court: . . . vacate the District Court's dismissal of Count II for want of subject matter jurisdiction. . . ."). Federal Rule of Appellate Procedure 28(a)(9) requires that an appellate brief contain the "contentions and the reasons for them with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9). Because Schwam failed to develop any argument or to cite any cases in support of vacating the award as required by Rule 28, we deem this issue abandoned and do not address it. 11126 Baltimore Boulevard, Inc. v. Prince George's County, 58 F.3d 988, 993 n.7 (4th Cir. 1995).

4

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Id. (internal quotation marks omitted).

A.

The district court granted summary judgment to XO on Schwam's unjust enrichment claim because it concluded that the SIP constituted a valid contract and, under Virginia law, an unjust enrichment claim will not lie when an express contract exists between the parties. Thus, to obtain a reversal, Schwam must demonstrate that the SIP contract is unenforceable. Schwam makes three arguments why the SIP is unenforceable: (1) the SIP is a contract of adhesion, (2) XO expressly stated the SIP was not a contract, and (3) lack of mutuality. We find Schwam's arguments unpersuasive.

Under Virginia law, "[a] contract of adhesion is a standard form contract, prepared by one party and presented to a weaker party -- usually, a consumer -- who has no bargaining power and little or no choice about the terms." Philyaw v. Platinum Enters., Inc., 54 Va. Cir. 364 (2001); see also Black's Law Dictionary 342 (8th ed. 2004)(defining contract of adhesion as the same). As the district court noted, Schwam admitted that he had employment

5

options other than XO and was under no obligation to work for XO. Schwam also admitted that XO offered him a sales management position, but he chose the business development position instead. Schwam's admission that he had the freedom to take a different job with XO or to leave XO altogether for a different company indicates that the SIP Schwam agreed to was not a contract of adhesion under Virginia law.

Schwam's next argument, that the SIP is not an enforceable contract because it states that it is not a contract, is also without merit. The SIP plainly states that the employee "acknowledges that this Plan does not affect [his] status as an employee-at-will of XO" and that it "is not intended in any way to create and does not create a term of employment or an employment contract, express or implied, between XO and [the employee]." (J.A. at 139 (emphasis added).). This statement means only that the SIP does not create an "employment contract," but the document does constitute the compensation contract for the parties. The SIP provides the entire sales incentive compensation agreement between XO and its salespersons. Because Schwam is contesting his compensation -- not his termination -- the SIP, as the express compensation contract between XO and Schwam, controls this suit.

Finally, Schwam urges us to hold the SIP unenforceable because it lacks mutuality of obligation. The Acknowledgment Form states that XO maintains the authority to "amend, supersede, or terminate

6

this Plan at any time and at XO's sole discretion." (J.A. at 139.) Schwam contends that this language renders any consideration given by XO illusory because XO can modify or terminate the plan at its discretion, and that makes the SIP unenforceable.

Under Virginia law, "[b]oth parties [to a contract] must be bound, or neither is bound . . . [and] where the consideration for the promise of one party is the promise of the other party, there must be absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement." Am. Agri. Chem. Co. v. Kennedy & Crawford, 48 S.E. 868, 870 (Va. 1904). At first blush, this rule seems to suggest that we should hold the SIP unenforceable because XO retained the right to "amend, supersede, or terminate" the contract at any time, thus making its promise illusory. A closer examination, however, indicates otherwise. In American Agricultural Chemical v. Kennedy & Crawford, 48 S.E.2d 868 (Va. 1904), the court refused to enforce a contract for the sale of fertilizer because the contract stated that the seller "reserve[d] the right to cancel t[he] contract at any time . . . ." Id. at 870. The court reasoned that "[i]n this case the plaintiff made a proposition to sell, which the defendants accepted, but the plaintiff's offer left it optional with it whether or not it would sell. It did not bind itself to sell." Id. at 871. "The plaintiff after that time never did any act or made any promise which bound it to complete the contract. . . . In the absence of

7

such obligation on the part of the plaintiff, and of such a right on the part of the defendants, there never was a binding engagement between the parties which a court of law would enforce." Id.

Here, Schwam and XO performed numerous acts indicating their intent to be bound by the SIP. Prior to terminating Schwam in January 2004, XO paid Schwam pursuant to the provisions of the SIP and Schwam accepted the compensation and continued to work. XO's consistent performance and compliance with the SIP removes the illusory nature of its promise leaving the SIP enforceable. Unlike the plaintiff in American Agricultural Chemical, XO performed acts "which bound it to complete the contract." American Agricultural Chemical, 48 S.E. at 871. This interpretation is also consistent with the prevailing rule that "[t]he test of mutuality of obligation of a contract is to be applied not as of the time when the promises are made but as of the time when the contract is sought to be enforced." 17A Am. Jur. 2d Contracts § 22 (2005); see also Asberry v. Mitchell, 93 S.E. 638, 640 (Va. 1917)(testing mutuality of obligation at the time a party sought to enforce the contract). By examining the mutuality of obligation to the SIP at this time when XO seeks to enforce the SIP over Schwam's challenge to it, there can be no doubt that XO's post-formation acts sufficiently bound it to the SIP.

In summary, we affirm the district court's grant of summary judgment to XO on the unjust enrichment claim because the SIP is

8

not a contract of adhesion, it is the compensation contract governing this dispute, and it is not invalid for lack of mutuality.

### B.

Next, Schwam contends that the district court erred in granting summary judgment to XO on his third breach of contract claim. Schwam argues that summary judgment was inappropriate because (1) an XO supervisor orally modified the terms of the SIP and (2) the breach of contract claim seeks the recovery of commissions that were earned prior to termination. We first address Schwam's oral modification argument.

In support of this argument, Schwam points to the fact that Ortega, Schwam's supervisor, told Schwam that "XO would take care of him next year, and he would get a part of the commissions based on the amount of business that he brought to the table." (J.A. at 59.) Schwam also notes that Ortega further stated that this statement meant XO would compensate Schwam "fairly." (J.A. at 60.) Virginia allows for the modification of written contracts if evidenced by express mutual assent. Stanley's Cafeteria, Inc. v. Abramson, 306 S.E.2d 870, 872 (Va. 1983). Assuming that the SIP could be modified by oral agreement, Ortega's statements do not constitute an enforceable oral modification because the statements are too indefinite. The SIP provides 23 pages of detailed

9

information regarding the calculation and payment of commissions. It is hardly plausible that Ortega's statements that XO would "take care of" Schwam and that Schwam "would get a part of the commissions" could effectively modify such detailed provisions. In fact, at the summary judgment hearing, Schwam's attorney admitted that Ortega did not specify the percentage of revenues Schwam would receive and that Ortega's statements were "indefinite" as to when the commissions would be paid. (J.A. at 327-328.) Schwam also admitted in his deposition that he did not know what percentage of revenue XO had orally promised to pay. Without knowing when and how much money XO allegedly orally promised Schwam, it is near impossible to enforce such a vague "contract." There is also no evidence that Ortega or any other officer of XO, expressly stated that Schwam's compensation would no longer be governed by the SIP. Thus, in the absence of clear evidence that XO intended to modify or supplement the SIP, we are constrained to enforce the SIP's detailed terms. See Stanley's Cafeteria, 306 S.E.2d at 873 (holding that "mutual intent" to modify a contract "must be shown by clear, unequivocal and convincing evidence" (internal quotation marks omitted)).

Finally, we address Schwam's argument that he is due the post-termination commissions because the commissions constitute compensation for previously rendered services. Again, we look to the language of the SIP to determine whether Schwam is entitled to

10

a percentage of the revenues generated from the contracts he secured prior to his termination. The SIP does not provide for post-termination commissions, as evidenced by the statement that a salesperson is deemed terminated on the last day of work for purposes of calculating commissions. The SIP also gives XO the authority to deny commissions or to remove a salesperson's eligibility for commissions. Moreover, Schwam admitted in his deposition that telecommunications companies do not usually pay employees commissions for income received by the company after the employee is terminated. We therefore agree with the district court that the SIP does not provide for the payment of post-termination commissions.

## III.

For the reasons given, we affirm the district court's grant of summary judgment to XO.

AFFIRMED

11