## BUICK MOTOR COMPANY *v.* THOMPSON.

1. If mutual promises are relied on as a consideration to support a contract, the obligations of the contract must be mutually binding upon the respective parties.

2. If parties agree that one will buy and the other sell articles of a certain character at stated prices, without specifying any number or amount of such articles, leaving the purchaser to give orders, the giving of an order or orders for certain things included in the offer to sell, before its withdrawal or termination, makes a contract as to the things so ordered, and the contract is no longer unilateral as to them.

3. A corporation manufacturing automobiles wrote to a person, agreeing that not later than a fixed date it would, "conditions permitting," supply him with goods of its manufacture at certain specified prices; that it was agreed that such person should not sell the cars outside of a certain county; that the contract could be terminated upon ten days written notice; that he should make reports of sales made by him; and that the receipt of $200 was acknowledged as a deposit, to be retained by the company and returned to the other party at the termination or cancellation of the contract, provided a full and complete settlement of all accounts due to the company had been made. An acceptance of this agreement was written under the communication of the company, and signed by the person to whom it was addressed. *Held*, that, in a suit for a breach of contract in failing and refusing to furnish cars ordered by such person from the company, it was not incumbent on the plaintiff to allege and prove that conditions permitted the defendant to supply him with the machines ordered.

(*a*) A petition which alleged such a breach of contract, and that the company had frequently promised to send the automobiles, but had finally failed and refused so to do, was not demurrable on the ground that it failed to allege that conditions permitted the defendant to do so.

JUNE 13, 1912.

Action for breach of contract.  Before Judge Ellis.  Fulton superior court.  March 2, 1911.

D. V. Thompson brought suit against the Buick Motor Company. The petition contained two counts. The first alleged substantially as follows: The defendant entered into a contract with the plaintiff, of which a copy was attached to the petition. The plaintiff deposited the $200 specified in the contract, and became the sales agent for defendant in Mitchell county, and at once opened an agency for the sale of automobiles, and devoted his time to securing orders therefor. He was not to be paid any salary, but was to receive, for the orders secured or which could be secured by him, the difference between the "list" and "price" figures, as shown on the contract. Where no "quantity limit" was placed upon a particular model, the orders which he could secure, and the number of such models which the defendant should deliver, were not limited. A list was set out, stating certain orders which the plaintiff sent to the defendant during the months of April to July, 1909, inclusive, together with the model for which each order was given, the "price," and the amount of compensation claimed upon such orders respectively. At various times the defendant promised to have the cars shipped, in order that they might be delivered to the purchasers, but finally failed and refused to deliver them, thus breaking its contract. The plaintiff could have made three additional sales, described, had the defendant complied with its contract. He did not actually send in the orders and make the sales, because the defendant had broken its part of the contract and did not ship the machines for which orders had previously been sent in. The plaintiff, in endeavoring to get the defendant to comply with its part of the contract and ship the cars for which he had secured orders, incurred an expense of $60 on account of trips to Atlanta. Damages were laid at $2,260.

The second count differed from the first in alleging that the defendant wrote to the plaintiff a letter on August 14, 1909, after the date for the expiration of the contract by its terms (July 31), extending the time, and that he accepted the proposition contained in this letter. All of the orders sent by him to the defendant were within the time thus extended, though some of them were after August 31. The other allegations were similar to those in the first count, including the averment that the defendant at various

times promised to have the cars shipped, in order that they might be delivered, but finally failed and refused to do so.

The contract relied on was headed "memorandum," and was dated January 21, 1909. It was directed, like a letter, to "D. V. Thompson, Pelham, Ga." It proceeded as follows: "Until further advised, but not later than July 31, 1909, provided the handling of your business is not in conflict with policy of our company, the Buick Motor Company, will, the conditions permitting, supply you with goods of its manufacture, herein described by letter and number (and more particularly described in its 1909 catalogue), at the following prices and terms." Then followed a list, of which the following item will serve as an illustration:

| "Model | List | Price | Quantity Limit |
|--------|------|-------|----------------|
| F. | $1,250.00 | $800.00 | 3." |

It then contained the following: "It is expressly understood and agreed that none of the above models will be sold by you to parties residing outside of the following territory, viz.: Mitchell county. It is hereby agreed that this contract can be terminated upon ten days notice to this effect given in writing. It is also understood and agreed, that, within five days from the date of sale by you of any Buick automobiles, you will furnish the office of the Buick Motor Company at Atlanta, Georgia, with a report of such sale, giving the name and address of the party purchasing same, the motor and serial number, the model sold, and the price paid. The receipt of two hundred and 00/100 ($200.00) dollars is hereby acknowledged as a deposit, same to be retained by the Buick Motor Company and returned to you at the termination or cancellation of this contract, provided a full and complete settlement of all accounts due the Buick Motor Company has been made." This paper was signed by the company, and followed by the word "accepted," and by the signature of the plaintiff.

The letter attached as an exhibit to the second count of the petition was dated August 14, 1909, and contained the following: "Replying to your letter of August 12th, beg to say that we have a deposit of $200.00 from you, and, if you wish it, will be very glad indeed to send you check immediately; but in the event we do this, we will not be able to ship you any more cars, as your contract would then be cancelled. We think that within a short time we will be able to give you quite a few of them, and probably

before our 1910 prices and contracts are out. We, therefore, ask you to advise us whether or not you will want to get some cars within the next 30 days, which of course you could do if your deposit remains with us, or if you prefer having us return the deposit to you."

To the petition the defendant interposed a demurrer containing general and special grounds. It was overruled, and the defendant excepted.

Cited in briefs (beside cases referred to in the opinion) : *Fontaine* v. *Baxley,* 90 *Ga.* 416; *Baldwin* v. *Marqueze,* 91 *Ga.* 404; *Huggins* v. *S. E. Cement Co.,* 121 *Ga.* 312; *Swindell* v. *Bank,* 121 *Ga.* 714; *Glessner* v. *Longley,* 125 *Ga.* 676; *Ala. &c. Co.* v. *Cont. Car Co.,* 131 *Ga.* 365, 370; *Atlanta Buggy Co.* v. *Hess Co.,* 124 *Ga.* 338; *Mallet* v. *Watkins,* 132 *Ga.* 700; *Hardin* v. *Case,* 134 *Ga.* 814; *Emerson* v. Pacific &c. Co., 1 L. R. A. (N. S.) 445; Newhall v. Journal Printing Co., 20 L. R. A. (N. S.) 899.

*Anderson, Felder, Rountree & Wilson,* for plaintiff in error.
*Colquitt & Conyers,* contra.

LUMPKIN, J. (After stating the foregoing facts.) Thompson sued the Buick Motor Company for a breach of contract. The defendant filed a demurrer, which was overruled, and it excepted. In addition to the general grounds there were also certain special grounds; but they are not urged or referred to in the brief of counsel for plaintiff in error, and therefore, under the uniform ruling of this court, will be treated as abandoned; and we will deal with the general grounds only.

1, 2. It was urged that the contract was unilateral; and that it did not bind the plaintiff to buy, and accordingly did not bind the defendant to sell. Where mutual promises are relied on as the consideration to support a contract, the obligations of the contract must be mutually binding upon the respective parties. *Morrow* v. *Southern Express Co.,* 101 *Ga.* 810 (28 S. E. 998). This does not exclude the fact that one may, for a valuable consideration other than such mutual promises, bind himself by an option or offer to sell on certain terms during a specified time. In such a case he is bound to keep the offer open during the specified time, for the other party to accept or decline to buy. If acceptance is made within the time prescribed, the transaction then ceases to be a mere option or offer, and becomes a contract to sell and buy.

*Simpson & Harper* v. *Sanders & Jenkins,* 130 *Ga.* 265 (60 S. E. 541).

It was contended, on behalf of the plaintiff in error, that this agreement belonged to the class 'first mentioned; that there was no consideration for the making of the contract unless there were mutual promises; that in any event the defendant in error did not bind himself to buy cars, and the plaintiff in error was not bound to sell cars; that the agreements limiting sales by the defendant in error to Mitchell county, declaring the contract terminable on ten days notice, requiring a report of any sales made, and a deposit of $200 by the defendant in error, were not considerations for the making of the contract, so as to bind the plaintiff in error to sell to the defendant in error any automobiles.

If it should be conceded that the agreements as to territory and reports were merely regulatory, in case sales were made to the defendant in error, and that the deposit was not a payment or such part performance as to be a consideration for a promise to sell, but only a guaranty of settlement if sales should be made, still how stands the case? An offer to sell on certain terms, without consideration therefor, is unilateral, and may be withdrawn before acceptance. After acceptance while still open and an agreement to buy, it ceases to be unilateral and becomes bilateral and binding. *Black* v. *Maddox,* 104 *Ga.* 157 (30 S. E. 723). If the offer is not for any specified amount, or an amount determinable by proof, such as what is necessary for a certain purpose, but is generally to furnish upon order, then the giving of an order for a certain thing or amount included in the offer, before its withdrawal or termination, makes a definite and fixed contract as to the thing or things so ordered. *McCaw Manufacturing Co.* v. *Felder & Rountree,* 115 *Ga.* 408 (41 S. E. 664); *Harrison & Garrett* v. *Wilson Lumber Co.,* 119 *Ga.* 6 (45 S. E. 730); 1 Page, Con. 456, § 307.

The first count of the petition alleged in effect that, during the time specified in the contract for its continuance and in accordance with its terms, the defendant in error received orders and made sales of several automobiles. The second count, in addition to the original contract, set out a letter treating the contract as continuing after the time fixed for its expiration, and the taking of orders and the making of sales while it was in force. Each of them alleged promises by the defendant to ship the cars ordered.

and a subsequent failure and refusal to do so. In the first count was an allegation seeking to set up liability on account of certain cars not ordered. But if it did not set out a right of recovery as to such item, that would not furnish ground to dismiss the entire case.

3. It was contended on behalf of the plaintiff in error, that the words "conditions permitting" in the contract created a condition precedent, and that it was incumbent on the plaintiff to allege that conditions permitted; and also (as stated in the brief) that "these words reserved to the company the decision as to whether conditions permitted." For the defendant in error it was argued, that if these words have any force to relieve the company of liability, they do not create a condition precedent, but such conditions should be set up by way of defense; and also that the allegations showed a waiver by promise to deliver the machines. If those words created a condition precedent, the burden of alleging and showing the happening of the event would be on the plaintiff. If they created a condition subsequent, the burden of setting it up would rest on the defendant. If the contention of the plaintiff in error is correct, the entire agreement as to sales amounted to no more than this: If the defendant in error desired to buy, and the plaintiff in error thought the conditions permitted it to sell, there would be a trade, otherwise not. Such an agreement would amount to no contract at all as to sales. It can hardly be supposed that these parties went through the idle form of making a written proposition and an acceptance merely to declare that there might be a trade if each desired to make it. They fixed a limit of time for the operation of the contract, and the number of certain models which might be ordered, provided for a termination of the contract on ten days notice, and stated the making of a deposit of $200 by the defendant in error. Was all this an elaborate method of declaring that no contract was actually intended to be made, but only in case one party ordered cars and the other thought conditions permitted their sending them? What conditions? What was to be considered,—the number of cars on hand, or of orders already accepted from others, or the capacity of the manufactory, or the number of laborers whom the company might see fit to employ or discharge, or its financial condition, or the general financial condition of the country, or the condition of the weather, or what conditions? It

will be readily seen that if the words "conditions permitting" create a condition precedent, and impose on the defendant in error, suing for a breach of such contract, the duty of pleading and proving that conditions permitted the plaintiff in error to fill the orders, it places on him an impossible burden. On the other hand, if there were conditions legitimately excusing the plaintiff in error from performance, they were peculiarly within its knowledge.

It has been held that where one of two contracting parties prepares a written or printed contract and obtains the signature of the other party, if it contains ambiguous terms, and such ambiguity is not explained, the construction which goes most strongly against the party so preparing it will generally be preferred. *Moorefield* v. *Fidelity Mutual Life Insurance Co.,* 135 *Ga.* 186 (69 S. E. 119), and citations. In *Griswold* v. *Scott,* 13 *Ga.* 210, suit was brought on a written contract by which the defendant acknowledged the receipt from the plaintiff of a gin, "and if on trial it performs well, I promise to pay said Griswold [the plaintiff] or bearer $80, for value received, by the 25th of December, 1910." It was held that this created a condition subsequent; that the vendee was prima facie liable to pay the specified amount; and that the defendant could set up that the machine failed to perform well on the trial of it.

Considering the contract involved in this case as a whole, we are of the opinion that the words "conditions permitting" did not create a condition precedent, requiring the plaintiff in the court below, defendant in error here, to allege and prove that conditions permitted, before he would be entitled to recover. Whatever force they may have may be invoked by the defendant in the court below by way of defense.

Moreover, the defendant in error alleged that at various times the plaintiff in error promised to have the cars shipped, in order that they might be delivered to the purchasers from him, but that the company finally failed and refused to do so.

There was no error in overruling the general demurrer to the petition.        *Judgment affirmed. All the Justices concur.*