HESSENIUS, Respondent, v. WETMORE, Appellant.

(153 N. W. 937.)

(File No. 3745.   Opinion filed August 28, 1915.   Rehearing denied.)

1.  **Pleadings—Contract, Mutuality, Want of—Non-necessity of Pleading Conclusion.**

   In a suit by a subdealer in automobiles to recover a deposit made by him on executing a sales contract with a dealer, held, that, in reviewing the trial court's conclusion of law that the contract lacked mutuality, the objection that the point was not raised by the pleadings was not well taken, since, the agreement in question having been set forth in the complaint, plaintiff was not required to allege that it lacked mutuality, as that would appear from the face of the pleading.

2.  **Sales—Contract—Incompleteness—Non-attached "Schedule" Referred to in Contract—Unenforceable Contract—Tender.**

   Where a sales contract between a dealer and a subdealer in automobiles provided that, subject to conditions thereinafter stated, the subdealer thereby agreed to buy and the dealer to sell 30 cars, followed by a provision that the subdealer would accept delivery of cars according to "the attached schedule," and no such schedule was made or attached to the agreement, held, that the agreement was on its face incomplete, and if in other respects valid, was unenforceable as to the remaining 24 cars not taken by the subdealer, until they had been tendered to him.

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by H. M. Hessenius against Harry A. Wetmore, doing business as the Sioux Falls Auto Company, to recover a deposit made by plaintiff under a sales contract; defendant counterclaiming. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*Wagner & Danforth,* for Appellant.

*Parliman & Parliman,* for Respondent.

(2) Under point two of the opinion, Respondent submitted that:   The purported contract, so far as it relates to the pur-

chase and sale of cars, is incomplete; it does not describe the kind or style of cars, nor the time when any of them should be delivered and received, but refers to a schedule which was never attached or made.

GATES, J.  On July 26, 1911, the defendant and another, doing business as the Sioux City Auto Company, entered into an agreement in writing with plaintiff as follows:

"Memorandum of agreement, made in triplicate this 26th day of July, 1911, by and between the Sioux City Auto Company, hereinafter called the dealer, and H. M. Hessenius, hereinafter called the subdealer: That in consideration of the mutual covenants and agreements herein contained the parties hereto agree as follows:

"1. The dealer agrees to sell to the subdealer f. o. b. cars at Detroit, Michigan, sight draft against bill of lading, with exchange unless paid for in advance by certified check or currency, Hudson automobiles described in the manufacturer's catalogue (excepting vehicles designed for public transportation service and commercial wagons, the manufacturer reserving the right to market them independently hereof), for distribution within the following described territory: Minnehaha, Moody, Lake, east half of McCook, two north tiers of townships in Turner, three north tiers of townships in Lincoln counties, S. Dak., Pipestone, Murray, Rock, and Nobles counties, Minn., and the four northwest townships in Lyons county, Iowa—and agrees to refer to the subdealer all inquires received from interested parties in this territory.

"2. The subdealer agrees not to solicit orders from nor to deliver any Hudson cars to parties residing outside of his territory (residence of purchaser shall be deemed to be his principal place of business).

"3. The dealer reserves the right to reapportion this territory at any time during the life of this contract, if in the opinion of the dealer the subdealer is not properly promoting the sale of Hudson cars in all or any parts of the territory described above.

"4. The Hudson cars, chassis and bodies, for which exclusive territory is hereby given the dealer, are governed by numerous letters patent owned by the manufacturers.  The subdealer hereby expressly acknowledges the validity of these patents and agrees not

to infringe, nor to permit, aid, or assist others to infringe, them.

"5. Each automobile will be sold by the dealer to the subdealer at a discount of 15 per cent. from the manufacurer's current advertised list price, and will be resold by the subdealer at the manufacturer's full current advertised list price only, nor shall the subdealer by rebates, allowances, donations, or any other means evade the spirit of this clause.

"6. The subdealer shall report at the end of each week to the dealer all names and addresses of parties purchasing Hudson cars from the subdealer during that week, together with the factory numbers of their respective cars.

"7. The subdealer agrees to pay to the dealer the list prices as published in the manufacturer's current price list for all parts purchased, less a discount of 15 per cent.

"8. Payment for parts shall be made on or before the 10th day of the month following shipment.

"9. The subdealer agrees to make no deduction from remittances for merchandise returned until after the reecipt from the dealer of a credit memorandum therefor.

"10. The subdealer agrees to deposit with the dealer the sum of $500 as a guarantee for the satisfactory performance of this agreement. Said deposit to be returned to him with interest at the rate of five per cent. (5%) per annum, upon the termination of this contract: Provided, in case subdealer shall make default in any performance hereof, the dealer may retain as much of said sum as he shall deem reasonable indemnity for any loss or damage thereby sustained.

"11. The dealer also reserves the right to apply all or any part of the deposit money to offset parts accounts, or transportation charges on parts or cars, or any or all other expenses incurred in the adjustment of claims or settlements.

"12. Subject to the conditions hereinbefore and hereinafter stated, the subdealer hereby agrees to buy and the dealer hereby agrees to sell to the subdealer f. o. b. Detroit, Michigan, thirty new Hudson motor cars.

"13. The subdealer agrees to accept delivery of cars according to the attached schedule, and to furnish detailed specifications for same. If the subdealer fails to furnish the dealer with detailed specifications thirty days before the 1st of the month during

which shipment is to be made, the dealer reserves the right at his option to deduct such cars from the total allotment and to dispose of them as he may see fit.

"14. The subdealer hereby agrees to maintain at all times at least one Hudson car for demonstration purposes, and to maintain a suitable salesroom and efficient shop for the care of Hudson cars in Sioux Falls, S. D.

"15. This agreement is contingent upon delays due to strikes, floods, accidents, or any other causes beyond the control of the manufacturer, whether occurring in the plant of the manufacturer or in that of any concern from which the manufacturer purchases parts of his motor cars; and the shipments of Hudson cars above purchased are to be made as herein specified subject to the prior orders of other dealers, and as the business of the manufacturer will permit.

"16. It is mutually understood that this contract shall be terminated by limitations on July 1, 1912. It is further understood that this contract supersedes all previous agreements between the contracting parties.

"17. This agreement becomes effective from date of signature by the dealer and the subdealer."

The defendant later acquired the sole interest in said agreement. Plaintiff made the deposit of $500. He ordered and received, within the life of the agreement, 6 automobiles. This action was begun to recover the $500 deposit. Defendant answered and counterclaimed, setting up an account for repairs and supplies and an account for damages in the sum of $1,920, by reason of the failure of the plaintiff to purchase the remaining 24 of the 30 automobiles ordered, viz., the discount or profit of $80 per car on each of said 24 cars. Plaintiff replied, setting forth in substance that he had the same contract with the defendant two previous years, and that in each of them the "attached schedule" provided that plaintiff would only be required to take as many automobiles as he could sell to the trade, and that it was agreed that the present contract should be the same. These allegations were not sustained by the proof. Plaintiff further alleged that:

"It was understood and agreed, at all times during the years 1910, 1911, and 1912, that the number of cars of the numbers named in the contract, to be taken each year by the plaintiff,

should and did depend upon the number the plaintiff was able to sell to the trade, and that during the years 1910 and 1911, and at the close of said seasons when settlement was made between plaintiff and defendant, plaintiff paid for the cars he ordered and received from defendant and no more, and that the said contract is in the usual form of contracts made between dealer and sub-dealers, and that under said contracts, and as a custom and usage of the trade, the subdealers are not required to take more of the machines ordered than they can sell to the trade."

Trial was had to the court, a jury having been waived. The court found that the plaintiff was entitled to recover the $500 deposit, with interest, less the sum of $77.75 for repairs and supplies. The court made, among others, the following findings of fact:

"Eighth. That no 'Attached Schedule,' mentioned in paragraph thirteen (13) of the contract, was ever made or attached to the contract.

"Ninth. That at no time did the defendants or either of them ever notify the plaintiff that they were ready and able to deliver the twenty-four (24) automobiles, or any number thereof, at Detroit, Michigan, or any other place, and of their readiness to deliver them to the plaintiff, and that the defendants never made any tender of the twenty-four (24) cars to the plaintiff or any lesser number than twenty-four (24).

"Tenth. That the said contract, in section fifteen (15) hereof, provides: [Here follows a copy of paragraph 15 of the contract.] That the said contract expired by limitation in less than one year. The plaintiff was permitted to sell only within a limited territory, and at the manufacturer's list price. The defendants reserved the right to reapportion the territory, at any time during the life of the contract, if in their opinion the plaintiff was not properly promoting the sale of Hudson cars in all or any parts of the described territory.

"Eleventh. That the purported contract is incomplete, in that it does not describe the kind or style of cars, nor the time when any of them should be delivered and received, but refers to a schedule which was never made or attached.

"Twelfth. That the said contract lacked mutuality, and was

incomplete and ineffectual as a contract for the sale of cars."

As conclusion No. 1 the court found:

"That the contract, Exhibit A, lacks mutuality, and is unilateral and incomplete and ineffectual, except in so far as it has been performed."

From the judgment and order denying a new trial, defendant appeals.

A large part of the argument is based upon the admissibility of evidence to sustain the allegations of plaintiff's reply, the substance of which is above set forth. Inasmuch as the learned trial court did not base its decision upon that evidence, and made no finding of fact or conclusion of law thereon, we fail to see the necessity of considering that matter. We are of the opinion that the court committed no error in refusing to allow any part of defendant's claim for repairs and supplies other than those above mentioned. This brings us to the important question in the case, viz., the correctness of the court's conclusion of law No. 1. Of this appellant says:

"(a) The point was not raised by the pleadings, nor by objection to evidence.

"(b) Plaintiff's action is based upon a partial performance of the contract, and he sued to recover the deposit made in compliance with it, and if there was any want of mutuality in the contract in the first instance, plaintiff is now precluded from raising that question.

"(c) The contract is not wanting in such mutuality or certainty as to entitle plaintiff to defeat the action for damages sustained by defendant on account of plaintiff's breach of his obligation to purchase cars."

[1] We think there is no merit in appellant's first reason. The agreement was set forth in full in both the complaint and answer. If it was a jug-handled agreement, the plaintiff was not required to allege it was jug-handled; that would appear from the face of the pleading.

Points (b) and (c), made by appellant as above set forth, may be considered together. Somewhat similar contracts have recently been considered in Velie Motor Car Co. v. Klopmeier, 194 Fed. 324, 114 C. C. A. 284, Goodyear v. Koehler Sporting Goods Co., 159 App. Div. 116, 143 N. Y. Supp. 1046, Buick

Motor Co. v. Thompson, 138 Ga. 282, 75 S. E. 354, Okland Motor Car Co. v. Indiana Automoble Co., 201 Fed. 499, 121 C. C. A. 319, and Gile v. Interstate Motor Car Co., 27 N. D. 108, 145 N. W. 732, L. R. A. 1915B, 109. In the last case mentioned there was a dissent by two‑of the five members of the court, and the majority opinion has been criticized in 12 Michigan Law Review, p. 677, and 62 University of Pennsylvania Law Review, p. 633.

[2] We find it unnecessary to pass upon the question of mutuality of this agreement, for the reason that this case differs from those, in that here the "attached schedule" was neither made nor attached to the agreement. This agreement was upon its face incomplete. If it were in other respects valid, it could not be enforced as to the remaining 24 cars until they had been tendered to plaintiff. This the trial court found was not done.

Finding no error in the record, the judgement and order appealed from are affirmed.