37116. J. L. LESTER & SON, INC. v. SMITH.

HILL, Presiding Justice.

In June, 1979, J. L. Lester & Son, Inc., a wholesaler grocer, was selling merchandise to H. W. Smith, a retail grocer doing business in Walton, DeKalb and Fulton counties. The wholesaler was also selling merchandise to Ernest L. Whitfield, a retail grocer doing business in DeKalb and Fulton counties.

Smith and Whitfield purchased three supermarkets in Tennessee and entered into "Operating Statements" with Lester & Son as wholesaler as to each one. Among other provisions these

uniform "Operating Statements," prepared by the wholesaler, provided that each store, a corporation, would, to the best of its ability, purchase from wholesaler, each week, all groceries and other merchandise sold by wholesaler at prices to be determined from time to time by wholesaler. The "statements" also provided in Part II, par. 2, that: "The persons signing this agreement for retailer shall be personally and individually bound to pay and liable for all indebtedness that may result on the part of retailer to wholesaler whether retailer is a partnership, corporation or proprietorship in addition to the liability of the retailer who may be operating as a corporation or partnership. The liability of the undersigned signatories shall be primary, original, joint and several, and suit may be brought for collection of such indebtedness against any one or more of the parties liable." At another point the "statements" provided that they were binding on "the representatives, successors and assigns of each of the parties hereto . . ." and shall continue for one year from date and be renewed thereafter automatically from year to year, provided that either party could terminate at any time upon written notice to the other party. The three "operating statements" were signed in substantially the following form:

"RETAILER: _____
( ) An Individual ( ) A Partnership (x) A Corporation

By: /s/ Ernest L. Whitfield, Jr.
    TITLE - President

By: /s/ H. W. Smith
    TITLE - Secretary and/or Treas."

The name of the "Retailer" was not filled in on the signature pages.

Whitfield and Smith also executed three 90-day promissory notes for the beginning inventory, bills of sale to secure debt, and financing statements. In addition, Smith executed a deed to secure debt with power of sale on 397 acres in Walton County to secure payment of the three promissory notes, the indebtedness of Smith and Whitfield, and the indebtedness of Bubba's of Tenn., Inc., a corporation being formed to own the three Tennessee stores.

Smith was shot at one of his DeKalb County stores in July, 1979; he left no will. Messrs. J. L. Lester and Ernest Whitfield attended the funeral. In the presence of Mrs. Smith, the deceased's widow, Whitfield told Lester that he would continue to operate the Tennessee stores.

After Bubba's of Tenn. filed for bankruptcy, the wholesaler commenced foreclosure under its security deed to the 397 acres in Walton County. Mrs. Smith, as administratrix of her husband's

estate, sought a temporary injunction against foreclosure, which was granted. The trial court found that the three promissory notes had been satisfied by payment of principal and interest, that in foreclosing under the security deed the wholesaler was seeking satisfaction of open account indebtedness, but that on the date of Smith's death there was no open account indebtedness and all such indebtedness had been incurred subsequent to Smith's death and notice thereof to Lester.

The wholesaler appeals the grant of the temporary injunction, contending that Smith is a signatory and party to, and therefore personally liable under, the "operating statements" by virtue of the manner in which those "statements" were signed, that Smith also is primarily, personally and individually liable for the open account indebtedness by virtue of that portion of Part II, par. 2, quoted above, that Smith was a surety as to the open account indebtedness by virtue of that paragraph, and that the "operating statements" are binding on Smith's "representatives, successors and assigns" by virtue of their express terms. (The three "operating statements" will hereafter be referred to as one for convenience.)

Assuming that Smith was personally liable as a signatory and party to the "operating statement" by virtue of the manner in which it was executed, or that in any event he was personally liable for indebtedness incurred under the "statement" pursuant to Part II, par. 2, we nevertheless agree with the trial court that neither Smith nor his estate was liable for the open account indebtedness which was incurred after his death with notice thereof to the wholesaler.

"If parties agree that one will buy and the other sell articles of a certain character at stated prices, without specifying any number or amount of such articles, leaving the purchaser to give orders, the giving of an order or orders for certain things included in the offer to sell, before its withdrawal or termination, makes a contract as to the things so ordered. . . ." *Buick Motor Co. v. Thompson,* 138 Ga. 282 (2) (75 SE 354) (1912). The "operating statement" fixed the terms and conditions upon which purchases were to be made by the retailer from the wholesaler. It was an offer for formation of a number of contracts from time to time. *Buick Motor Co. v. Thompson,* supra; Rest. Contracts, § 30; Rest. Contracts, 2d Tent. Draft, § 30, Comment c; 1 Williston, Contracts, § 58 (3d Ed. 1957). Smith cannot be liable for those contracts made after his death pursuant to the standing offer made in the "operating statements" because "To constitute a valid contract, there must be parties able to contract [and] the assent of the parties to the terms of the contract. . . ." Code Ann. § 20-107. Whether Smith be the offeror or offeree, "An offeree's power of acceptance is terminated when the offeree or offeror dies. . ."

Rest., Contracts, 2d Tent. Draft, § 48. Not being personally liable as a signatory and party to the "operating statement" as to contracts made after his death, Smith was not liable under Part II, par. 2, thereof for payment of those contracts.

Thus, while it appears that Smith's estate would have been liable for payment upon any contracts entered into prior to his death, his estate is not liable for payment upon contracts made pursuant to the "operating statements" after his death. Therefore, the trial court did not err in enjoining the foreclosure sale instituted to satisfy the open account indebtedness incurred subsequent to Smith's death.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 2, 1981 —
REHEARING DENIED JUNE 23, 1981.

*Marson G. Dunaway, Jr.,* for appellant.
*A. L. Mullins, Jr.,* for appellee.

ON MOTION FOR REHEARING.

The trial court found as facts that "The three promissory notes have been satisfied by payment in their principal amount plus interest" and that "On the date of his [Smith's] death, July 25, 1979, there existed no outstanding open account indebtedness and all such indebtedness was incurred both subsequent to his death and after Lester had notice of Smith's death."

On motion for rehearing, the wholesaler contends that this latter finding of the trial court was erroneous. This issue is one which can only be resolved at a trial on the merits and the trial court did not abuse its discretion in granting the interlocutory injunction in order to preserve the status quo until that issue could be decided upon the final trial of the case. *Parker v. American Family Recreation Center,* 229 Ga. 633, 635 (193 SE2d 830) (1972); *Turner v. Trust Co. of Ga.,* 214 Ga. 339, 348 (105 SE2d 22) (1958).

*Motion for rehearing denied.*