### 63513. J. L. LESTER & SONS, INC. v. SMITH.

BIRDSONG, Judge.

Open Account Indebtedness. J. L. Lester is a wholesale grocer doing business in Georgia. Prior to 1979, Lester furnished groceries to several stores operating under the name of Yellow Jacket stores owned and operated by H. W. Smith. Lester operated essentially a cash-and-carry business, but because payment by checks sometimes was delayed, or for other reasons, Lester by force of circumstances in effect extended credit pending payment. Nevertheless, the obvious intent of the purchasers and seller of the wholesale groceries was that credit was not extended and all sales were for cash. Also prior to June 1979, Lester sold groceries to Ernest L. Whitfield. Both Smith and Whitfield had established good business relations with Lester, paying their bills promptly and fully. In June 1979, a grocer in Chattanooga, Tennessee died apparently possessed of three grocery stores. After death of the owner, the stores were allowed to deteriorate both in grocery stock and building and fixtures. Smith and Whitfield negotiated with the widow, Mrs. Lasater, for the purchase of two of the stores. Smith approached Lester to restock the two stores in Chattanooga which Lester agreed to do. Smith and Whitfield signed promissory notes as president and secretary of a new corporation, Bubba's of Tennessee, to pay for the groceries

furnished by Lester to restock the two stores. Smith and Whitfield then arranged to purchase the third store in Kimball, Tennessee, a suburb of Chattanooga. Lester also agreed to restock this store. A third note was prepared to cover the cost of this purchase. The first two notes were re-signed by Smith and Whitfield along with the third note and Smith pledged by security deed almost 400 acres of land lying in Walton County as additional security for the purchase of groceries for all three of the stores. This last signing occurred in late June 1979. Smith and Whitfield also signed in their individual capacities as guarantors of all three notes. A month later in late July 1979, Smith was murdered in one of his other stores in Georgia.

Lester's business practice was to ship groceries to each store and then present the purchaser with a summary sheet showing the purchased groceries and the amount owing. As payments were made, the payment was applied to the oldest purchase. Payments were made throughout June, July and later months on the basis of these summary sheets. Even after Smith's death, Lester continued to furnish groceries to Bubba's of Tennessee until Whitfield informed Lester that future purchases of groceries would be made from another wholesaler. At this time, counting the three notes that had become due as well as the open account indebtedness, Bubba's was indebted to Lester in excess of $205,000. Lester made demand for payment of the entire indebtedness upon Smith's estate and then commenced advertising for foreclosure of the 400 acres in Walton County. In order to protect the land, Mrs. Smith acting on behalf of Smith's estate, paid all the first two notes guaranteed by Smith. When Lester recommenced advertising and foreclosure proceedings against the land to recover the open account indebtedness in addition to the third note (the Kimball store note which ultimately was paid into the registry by order of the court), Mrs. Smith sought a restraining order followed by an interlocutory injunction to forestall the foreclosure pending the determination of the validity of the estate's obligation for the open account indebtedness and the validity of the security deed. Lester answered and filed a counterclaim seeking payment of the open account as well as the third note and attorney fees. The trial court granted the temporary injunction, whereupon appellant Lester filed an appeal to the Supreme Court. While the appeal was pending in the Supreme Court, Lester amended its counterclaim to complain that Smith and Whitfield together with Mrs. Lasater conspired in Georgia (with Smith and Whitfield acting as agents for Mrs. Lasater) to defraud Lester. The trial court was affirmed in its grant of an injunction by the Supreme Court. *J. L. Lester & Son v. Smith,* 247 Ga. 710 (280 SE2d 732). Upon remand, the trial court granted summary judgment to Mrs. Smith as

administratrix on her complaint for an injunction, found that the estate was not liable for any indebtedness to Bubba's of Tennessee because it was incurred after Smith's death; found that all three notes had been satisfied and directed the last note (involving the Kimball store) be marked satisfied and returned to the estate; directed the security deed which also had been paid in full to be marked satisfied and returned to the estate; concluded that the estate was not liable for debts owed by the Yellow Jacket stores; concluded that there was no evidence of fraud so as to warrant the interpleader of Mrs. Lasater in the Georgia suit; concluded that there was no jurisdiction under the long arm statute to exercise jurisdiction over Mrs. Lasater; and lastly, granted summary judgment to Mrs. Smith as to Lester's cross complaint. Lester brings this appeal enumerating as error each of those rulings. *Held:*

1. In its first enumeration of error, Lester urges that the trial court erred in granting summary judgment to Mrs. Smith on the main (her) complaint. This enumeration is supported by several interrelated arguments. Lester first argues that it was not afforded the requisite 30 days in which to prepare its defense to the motion for summary judgment nor given adequate time to file its defenses thereto. In fact, however, the record shows that Mrs. Smith filed her motions for summary judgment on the main complaint and Lester's original cross complaint on November 26, 1980. An amended motion for summary judgment was filed by Mrs. Smith on June 11, 1981. The notice of the hearing date on the motion was filed on July 6, 1981, for a hearing date of July 15. The hearing on the motions was held on July 15, 1981. The ruling on the motion was not rendered until September 29, 1981, during which time both parties were at liberty to file additional briefs in support of their respective positions. The supplemental order by the trial court dealing with the Yellow Jacket indebtedness was rendered on November 6, 1981.

It is obvious from the above chronology that 34 days elapsed from the filing of the amended motion for summary judgment until the hearing thereon and the order relating thereto was not entered and filed until 75 days after the filing (see CPA § 56 (c); Code Ann. § 81A-156 (c)). Moreover, the notice of the hearing on the motion was served on Lester nine days before the hearing, well within the five-day notice required by CPA § 5 (d) (Code Ann. § 81A-105 (d)). In effect, appellant argues that it should have had 30 days notice of the hearing from the trial court as opposed to notice from counsel, and that the trial court erred in denying it further time in which to prepare its defensive pleadings. We reject this facet of the appellant's argument and find a satisfactory compliance with the mandates of the Civil Practice Act.

Appellant also argues that the debtor Smith signed the three notes and security deed as a surety and not as a guarantor. As surety, Lester argues that the debt survived Smith's death and bound his estate. Secondly, Lester argues that there are questions of fact as to whether the indebtedness or part of it existed at the time of Smith's death and if so whether the subsequent payments extinguished the existing debts so as to relieve the estate from further obligation.

It is not disputed the three promissory notes signed by Smith have been fully satisfied by the estate as well as all accrued interest and that attorney fees have been paid into the registry of the court. Thus, the only bone of contention is the open account indebtedness. In its original order granting the temporary injunction precluding Lester from proceeding with its foreclosure action on the Walton County property, the trial court found as a fact that the estate would not be liable for any open account indebtedness incurred after Smith's death inasmuch as Smith agreed as an individual to be responsible for each new purchase as it was incurred. This logically followed the factual conclusion that the intent of the parties was to extend no credit but to require payment as soon as reasonably possible after the delivery of groceries to Bubba's of Tennessee. Smith thus contingently agreed to pay for such groceries only when and if they were ordered and delivered. This continuing promise was extinguished by his death. In its opinion in *Lester v. Smith,* 247 Ga. 710 at p. 712, the Supreme Court held: "Assuming that Smith was personally liable as a signatory and party to the 'operational statement' by virtue of the manner in which it was executed, or that in any event he was personally liable for indebtedness incurred under the 'statement' pursuant to Part II, par. 2, we nevertheless agree with the trial court that neither Smith nor his estate was liable for the open account indebtedness which was incurred after his death with notice thereof to the wholesaler."

As to whether any of the original indebtedness incurred before Smith's death still exists, the only evidence we have been able to find in the record shows that the three promissory notes were to cover the costs of groceries delivered to the three Tennessee stores up to the face value of the notes. The continuing purchases exceeding the face value of each note were to be satisfied out of income generated by the respective store to which groceries were delivered. The records available to the trial court showed that the continuing payments were made to the oldest indebtedness. Thus, the records show that the amount of the notes plus payments made from store income when applied to statements for groceries delivered to the three stores were sufficient to extinguish all indebtedness existing prior to Smith's

death. This was the contention of Mrs. Smith before the trial court and we note that Lester does not seriously contend that the cost of groceries delivered prior to July 25, 1979 (the date of Smith's death) has not been satisfied. Lester makes the brunt of its argument to the point that Smith was a surety and the estate is liable for the entire open account indebtedness. However, the opinion of the Supreme Court resolves that contention adversely to Lester's interest for it is now the law of the case that Smith's estate is not liable for post-death indebtedness.

Related to this argument is Lester's contention that the trial court erred in ordering the return of the Kimball note and the security deed marked satisfied. Lester naturally objects to relinquishing collateral which it contends supports the open account indebtedness. As we have earlier concluded, there is no contention that all three notes have not been paid by the estate, including all interest and attorney fees. The Supreme Court has affirmed the trial court's conclusion that Smith's estate is not liable for post-death indebtedness. Thus, the trial court correctly concluded the Kimball note should be marked satisfied and returned to the estate. Because the security note was determined to cover the three notes and not the post-death indebtedness, it too properly was ordered to be marked satisfied and returned to the estate. We find no merit in enumerations 1, 5, or 6.

2. Enumerations 2, 3, and 4 also are related to each other. After the Supreme Court had affirmed the grant of Mrs. Smith's motion for injunction against foreclosure, Lester amended its counterclaim to reflect that Smith and Whitfield conspired with Mrs. Lasater to defraud it by withholding important information concerning the operation of the stores and the financial arrangements between Mrs. Lasater and Bubba's of Tennessee. In Enumerations 2, 3, and 4, Lester argues that the trial court erred in finding no evidence of fraud in the contractual negotiations between itself and Smith and Whitfield. This finding of absence of fraud resulted in the grant of summary judgment to Mrs. Smith as to the counterclaim and the denial of Lester's motion to join Mrs. Lasater under the provisions of the long arm statute.

Pretermitting any error by the trial court in concluding that there was no evidence of fraud, we find this portion of the trial court's order to have been mooted by the conclusion that Smith's estate is not liable for the open account indebtedness. Assuming a conspiracy and fraudulent activities by Mrs. Lasater, Smith and Whitfield, such a conspiracy would only have affected the validity of the three promissory notes and the open account. We have concluded already that the notes have all been satisfactorily paid and Smith's estate has

no obligation for the open account. A judgment right for any reason normally will be affirmed. *Argonaut Ins. Co. v. Cline,* 138 Ga. App. 778, 782 (4) (227 SE2d 405). Smith has lived up to all his promises and left Lester as financially sound as the law requires. It is an old and sound rule that error, to be reversible, must be harmful. *First Nat. Bank v. American Sugar Refining Co.,* 120 Ga. 717 (48 SE 326); *Burger Chef Systems v. Newton,* 126 Ga. App. 636, 639 (191 SE2d 479). Moreover, we find ample support for the trial court's conclusion that there is no evidence that either Smith or Whitfield ever held themselves out to be agents for Mrs. Lasater. If there were fraudulent activities, they occurred in Tennessee and whatever was said in north Georgia to Lester by Smith and Whitfield was in relation to Bubba's of Tennessee and did not relate to Mrs. Lasater. The trial court did not err in concluding that the long arm statute did not reach Mrs. Lasater where there is no evidence that there were contacts in this state by her or on her behalf.

3. In its last enumeration of error, Lester argues that the trial court erred in concluding the Smith estate was not liable for indebtedness owing to Lester by the Yellow Jacket stores. It is not disputed that Smith was the sole proprietor of those stores and that indebtedness was incurred on the behalf of the Yellow Jacket markets. However, it is equally clear that Smith signed the agreement with Lester as an officer of that corporation. There simply was no credible evidence or justification for concluding that Smith became individually liable for the Yellow Jacket debts. In the absence of an individual indebtedness, there was no continuing liability imposed upon Smith's estate. The trial court did not err in its supplemental order relieving the estate and Mrs. Smith as administratrix thereof of any obligation relating to those debts.

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

DECIDED MAY 3, 1982 —
REHEARING DENIED JUNE 7, 1982.

*William J. Perry, Marson G. Dunaway, Jr.,* for appellant.
*A. L. Mullins, Jr., Stephen L. Cotter,* for appellee.