Syllabus.

---

# Richmond.

## SMOKELESS FUEL COMPANY V. SEATON & SONS.

### March 1, 1906.

1. CONTRACTS—*Mutuality—Consideration—Case at Bar.*—The general rule of law is that where the consideration for the promise of one party is the promise of the other party, there must be absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement. Both must be bound or neither is bound. The contract which is the basis of this action measures up to this requirement. It states that the party of the first part has sold to the party of the second part 1,000 to 1,500 tons of coal, at a price named in the contract, to be shipped as ordered, within a time therein specified, and is signed by both parties. Under its terms the purchaser was obliged to take not less than 1,000 nor more than 1,500 tons, at the price and within the time stated in the contract, and the seller was bound to deliver the coal as ordered within the time stipulated. There were both mutuality of obligation and valuable consideration.

2. CONTRACTS—*Strike Clause—Burden of Proof—Questions for Jury.*—Under a contract for the sale and delivery of coal which provides that "it is taken subject to strikes . . . or any other cause beyond the control" of the seller, the seller is excused from performance if a strike occurs which is so far beyond his control as to render performance impossible, but if he seeks to excuse non-performance by reason of the existence of such a strike, the burden is on him to prove it, and it is for the jury to say, upon the evidence, whether or not such a strike did exist.

3. CONTRACTS—*Goods to be Delivered as Ordered—Demand of Performance—Question for Jury.*—Under a contract to deliver coal as ordered by the buyer, it is necessary for the buyer to prove that he gave orders for coal which were not filled before he can hold the seller liable in damages for a failure to deliver. Whether or not such orders were given is a question for the jury.

4. CONTRACT FOR DELIVERY ON ORDER—*Indemnifying Bond.*—Under a contract to deliver coal as ordered by the buyer, saying nothing as to indemnity or security, the seller has no right to demand an indemnifying bond to render him safe in making shipments, as a condition precedent to the delivery of coal ordered by the buyer.

Error to a judgment of the Circuit Court of the city of Richmond in an action of assumpsit.    Judgment for the plaintiffs. Defendant assigns error.

*Affirmed.*

This was an action of assumpsit by the purchaser to recover damages for breach of a contract to deliver coal as ordered.    The contract is set out in the opinion.    In reply to a letter by the purchasers, requesting shipments of coal as per contract, the sellers wrote demanding an indemnifying bond, as stated in the opinion.    This letter was as follows:

"RICHMOND, VA., April 4th, 1903.

"W. E. Seaton & Son, Richmond, Va.:

"Gentlemen,—We beg to acknowledge receipt to-day of your letter of the 28th ult., requesting us to ship you, as soon as possible, the residue of coal under your contract dated April 11th, 1902, calling for an approximate quantity of 1,000 to 1,500 tons of New River steam coal from the Collins Colliery Co.    Also your further statement to the effect that you have received only 160 tons thus far.    This letter of yours was transmitted to us by Mr. Emmett Seaton, under date of April 1st, and also received to-day.

"Although the Collins Colliery Company is still operating under strike conditions and coal purchased is being mined

under protection of a heavy armed force of deputies, still we do not wish to take advantage of these conditions, but would prefer to continue amicable and pleasant relations, and to that end will state that we will make you shipments of coal to the extent of our ability, and as provided for under the relief clause of the contract above referred to, up to April 11th of this year, if you on your part will place us in position of being entirely safe in the way of settlement for coal we may ship under this arrangement. This is rendered necessary because under the present circumstances we doubt your ability to handle this account satisfactory to us, but if you will file with us a proper indemnifying bond to the extent of $1,450.00 to save us harmless, we will immediately take cognizance of your order of March 28th, and exercise every effort to get forward to you all the coal possible prior to the expiration of your contract.

"Very truly yours,
"SMOKELESS FUEL COMPANY,
"Per J. A. Renahan, V. P. & G. M."

*Sands & Sands,* for the plaintiff in error.

*Emmett Seaton* and *H. R. Pollard,* for the defendants in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by Seaton & Sons, who are coal merchants in the city of Richmond, against the Smokeless Fuel Company, a corporation engaged in selling coal to such merchants, to recover damages for the breach by the defendant of the following contract, between the parties, which is set out in the declaration:

"This agreement entered into this eleventh day of April, 1902, by and between Smokeless Fuel Company, party of the first part, and W. E. Seaton & Sons, party of the second part, both of the city of Richmond, witnesseth: That the party of the first part has sold to the said party of the second part 1,000 to 1,500 tons New River R. O. M. steam coal from Collins Colliery Company at one dollar and ten cents ($1.10) per net ton of 2,000 lbs., freight rate to apply on this coal is one dollar and fifty cents ($1.50) per net ton of 2,000 lbs. from New River District to Richmond, Virginia. We guarantee this rate against any advance, but should there be a reduction of same during life of contract, party of the second part is to have advantage of the reduced rate on all coal shipped after such rate is put into effect. The party of the first part will use every effort possible towards completing this contract in a satisfactory manner to the party of the second part, but it is taken subject to strikes, accidents, shortage of cars, or any other causes beyond the control of said party of the first part. Coal is to be shipped as ordered between this date and April 11, 1903. In consideration of the above both parties hereby affix their seals in triplicate on the date aforesaid.

> (Signed)    Smokeless Fuel Company,
> Wm. Shands, Mgr. (Seal).
> (Signed)    W. E. Seaton & Son    (Seal)."

The trial resulted in a verdict and judgment in favor of the plaintiff for $1,139.00.

The petition for a writ of error sets forth three particulars in which it is claimed that the lower court erred. The first contention is that the contract sued on should have been held to be invalid for want of consideration and mutuality. This question was raised by demurrer to the declaration, and subse-

quently by objection to the admission of the contract in evidence, by instructions refused, and lastly by motion in arrest of judgment.

We are of opinion that the demurrer and each of the subsequent motions of the plaintiff, calling in question the validity of the contract, were properly overruled.

The general rule of law is that where the consideration for the promise of one party is the promise of the other party, there must be absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement. Both parties must be bound or neither is bound. *Am. Agricultural Co.* v. *Kennedy,* 103 Va. 171-176, 48 S. E. 868.

We think the contract under consideration meets the requirements of this general rule. It is clear and definite in its terms, between competent parties, and for a valuable consideration, to-wit: The promise of the seller to deliver the coal as ordered, within the time prescribed, and the promise of the buyer to receive the same and pay the price agreed upon. Under the terms of the contract, the plaintiffs were bound to take not less than one thousand nor more than fifteen hundred tons. The price to be paid is stipulated in the contract, as is also the time in which the contract was to be performed. There was, therefore, not only a valuable consideration to sustain the contract, but absolute mutuality of engagement; both parties being bound to perform, and either liable to the other for a breach of the contract.

The second contention is that the Circuit Court erred in its interpretation of the "strike provision" in the contract sued on.

The contract provides as follows: "The party of the first part will use every effort possible towards completing this contract in a satisfactory manner to the party of the second part, but it is taken subject to strikes, accidents, shortage of cars,

or any other causes beyond the control of said party of the first part."

The evidence shows that between the 11th day of April, 1902, and the 7th day of June, 1902, the defendant furnished to the plaintiffs all of the coal ordered by them at the contract price, being one hundred and sixty tons.  On the 7th day of June a strike occurred in the coal district where the Collins Colliery Company was located, from which the coal bought by the plaintiffs was to shipped.  The evidence shows that the expenses of the Collins Colliery Company were increased by this strike, but that it was one of the few coal companies in the district that was not compelled to close operations at any time during the strike, and that the company shipped nearly as much coal between June, 1902, and April 7, 1903 (the period in which the strike occurred), as it did between the same dates of the preceding year, when there was no strike.

Upon this subject the court instructed the jury as follows:

"The court, however, instructs the jury that the burden of proof is upon the defendant to show that it was prevented from fulfilling its contract by reason of strikes, shortage of cars or other causes beyond their control.

"The court instructs the jury that if they believe from the evidence that after the contract sued on in this case had been made and entered into by the plaintiffs and defendant that there occurred at the mines of the Collins Colliery Company a strike which was beyond the control of said Collins Colliery Company and said defendant, and that this strike lasted during any part of the time of the contract, to-wit: from the 11th day of April, 1902, to the 11th day of April, 1903, that during the pendency of such strike the defendant was not compelled to deliver coal and the contract was in abeyance during the time of such strike."

This provision of the contract clearly meant that the defendant should be relieved from the performance of its part of the contract if there occurred a strike which was so far beyond its control as to make the performance of the contract impossible. Whether the defendant was prevented from performing its contract by a strike was a question for the jury, and we are of opinion that it was properly submitted by the instructions mentioned.

The third contention is that the defendant was relieved from performing its contract because the plaintiff failed to demand the coal. It is insisted that the only demand for coal was ten or twelve days before the contract expired, and that the defendant then required an indemnifying bond as a condition of delivery, and that this request for an indemnifying bond was never noticed or replied to by the plaintiff.

This position is wholly untenable. The evidence tends to show that the plaintiffs were continually making demand of the representatives of the defendant company in the city of Richmond for coal to be delivered under the contract, and that if it had been delivered as demanded the whole fifteen hundred tons would have been received; that these demands would be made of the Richmond manager of the defendant company as often as two or three times a week, and that the uniform reply was that he could deliver the plaintiff plenty of coal, but it would be at the advanced price. The order referred to by counsel for the defendant as given ten or twelve days before the contract expired was written directly to the defendant company at Cincinnati, Ohio. The demand in reply for an indemnifying bond as a condition to delivering the coal was without warrant, and the plaintiffs were under no obligation to comply therewith. This question was also one for the jury, and was properly submitted to them by the following instruction:

"The court instructs the jury that under the contract sued on in this case it was incumbent upon the plaintiffs to demand the coal included therein in order for the defendant to be held responsible for a breach in failing to deliver the same, or any part thereof, and such demand must be proven by a preponderance of evidence, and cannot be inferred."

After the strike occurred in the coal district where the Collins Colliery Company was located, the price of coal advanced greatly beyond that at which the defendant company had contracted to deliver coal to the plaintiffs; and as early as October 30, 1902, the Richmond manager of the defendant company wrote to the plaintiffs that he had been advised by the "mines" to cancel all orders and contracts that they had with the plaintiffs, offering as an excuse the refusal of the plaintiffs to accept a car of egg coal not ordered by them under the contract here involved. To this letter the plaintiffs replied, saying that they were entirely justifiable in refusing to· accept the carload of egg coal; that the transaction had nothing whatever. to do with the contract here involved; and that they would expect the defendant to live up to such contract according to the terms named in it.

Upon the whole case, we are of opinion that the jury were properly instructed, and their verdict was amply sustained by the evidence. For these reasons the judgment of the Circuit Court must be affirmed.

*Affirmed.*