ELLIS v. DODGE BROS.

(Circuit Court of Appeals, Fifth Circuit. December 17, 1917.)

No. 3033.

1. CONTRACTS ⬥10(4)—TO SELL AUTOMOBILES—MUTUALITY.

Agreement whereby automobile manufacturer grants right to dealer to sell them, which provides it will ship cars to him with sight draft attached, that he will appoint associate dealers in his territory, that he will make claim for shortages within 10 days after receipt of shipments, and that he authorizes it to make shipment in accordance with the schedule therein contained, obliges it to sell to him; the contract not being canceled as therein authorized.

2. CONTRACTS ⬥162—CONSTRUCTION.

Agreement between automobile manufacturer and dealer, in the clause providing for sale by manufacturer to dealer of cars according to a given schedule, stipulated that the dealer would not cancel any cars in the schedule, without giving 15 days' notice, in which event the manufacturer might cancel an equal number, and in another clause provided that the agreement should expire by limitation in a year, or might be canceled by either party on 15 days' notice, and that cancellation or termination of it would act as a cancellation of all orders from the dealer for cars not delivered prior to the cancellation. *Held* that, in case of conflict between the clauses, the specific provision with reference to cancellation in the clause containing the schedule governed the schedule, so that, the agreement having expired by limitations, without any modification of the schedule, the dealer had a right of action for nondelivery of cars provided in the schedule.

Grubb, District Judge, dissenting.

In Error to the District Court of the United States for the Northern District of Georgia; William T. Newman, Judge.

Action by Frampton E. Ellis, administrator of Samuel A. Pegram, deceased, against Dodge Bros. Demurrer to the petition was sustained (237 Fed. 860), and plaintiff brings error. Reversed and remanded.

Shepard Bryan and Madison Richardson, both of Atlanta, Ga., for plaintiff in error.

Alex C. King and Daniel MacDougald, both of Atlanta, Ga. (King & Spaulding, of Atlanta, Ga., and McGregor & Bloomer, of Detroit, Mich., on the brief), for defendant in error.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

BATTS, Circuit Judge. Suit was instituted by Samuel A. Pegram against Dodge Bros. on an instrument which describes itself as a dealer's agreement. Upon the death of Pegram his administrator became a party. The material parts of the agreement may be thus summarized:

(1) The manufacturer grants unto the dealer the right to sell Dodge Bros. motorcars and repair parts during the life of the agreement in the territory described.

(2) The price at which cars are to be billed is indicated, running from 6 to 12 motorcars, inclusive, at 15 per cent. off manufacturer's list price, to 1,000 cars or more, at 25 per cent. off.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

(3) The prices of repair parts are indicated.

(4) A deposit of $1,000 is required to protect the manufacturer against nonpayment of repair parts accounts; the deposit to be returned upon the expiration of the agreement, with interest at 6 per cent.

(5) The dealer agrees to appoint associate dealers.

(6) "The manufacturer will ship cars to the dealer, with sight draft against bill of lading attached, and the dealer shall pay such draft with exchange, upon presentation. Upon failure to do so, the dealer will pay interest thereon at the rate of 6 per cent. per annum from the date of presentation."

(7) "This agreement shall expire by limitation June 30, 1915, or may be canceled by the manufacturer or dealer upon 15 days' written notice. The termination or cancellation of this agreement will immediately act as a cancellation of all orders received from the dealer for motorcars or parts, which have not been delivered prior to date of cancellation."

(8) The dealer is to make claims for shortage within 10 days after receipt of a shipment.

(9) The manufacturer reserves the right to change list prices at any time.

(10) "The dealer authorizes the manufacturer to make shipments of Dodge Bros. motorcars in the quantities and according to the schedule printed below. The dealer agrees to accept and pay for such motorcars as shipped, and will not cancel any motorcars in this schedule without giving the manufacturer 15 days' written notice, in which event the manufacturer will have the right to cancel a number of motorcars equal to those canceled by the dealer." The list is then given, as follows: October, 8 touring cars; November, 2 roadsters and 7 touring cars; December, 2 roadsters and 16 touring cars; January, 2 roadsters and 19 touring cars; February, 3 roadsters and 21 touring cars; March, 2 roadsters and 25 touring cars; April, 3 roadsters and 24 touring cars; May, 3 roadsters and 30 touring cars; June, 3 roadsters and 30 touring cars.

(11) The dealer agrees to purchase repair parts that will inventory not less than $3,000. Upon the termination of the agreement, the manufacturer agrees to purchase from the dealer any new repair parts that he may have in stock, the dealer to prepay transportation to Detroit.

(12) "It is the intention of the manufacturer to at all times establish list prices which represent a fair value to the car owners, and a legitimate profit to the dealer, discounts considered. Therefore the dealer should sell only at these list prices to enable him to successfully conduct a permanent business."

(13) A provision as to the manufacturer's warranty.

The agreement was dated July 29, 1914. During the period covered by the agreement, 64 cars were delivered to the plaintiff. Plaintiff, contending that 136 cars were still due under the contract, sought to recover damages for the failure to deliver these cars. The plaintiff alleged that in order to carry out the contract he had rented property

at the rate of $210.60 per month, that he had devoted his time to the business contemplated by the agreement, that he had maintained a selling force during the period of the contract, and that he had incurred other expenses which were set up in the petition. The petition is in a number of counts; the first, third, fourth, and fifth being based upon the theory that the agreement, having never been canceled, was continuing until expiration under its terms, and that, plaintiff having completely performed, and Dodge Bros. having accepted the benefits accruing to it by his performance, the defendant became bound to perform its part of the agreement. Counts 2 and 6 are upon the theory that, at all events, the dealer's agreement constituted an offer to sell the cars therein set out, and this offer was accepted by Pegram's placing orders for the 200 automobiles specified in the agreement.

The defendant filed a number of special exceptions to the petition, and by general demurrers raised the following issues:

(1) That the contract was in law a nullity.

(2) That it was not a binding offer to sell, by reason of the arbitrary right of cancellation, and that the acceptance of the offer would not make a binding contract, as one party would be bound and the other not; the effect being to make the contract unilateral and void.

(3) That if the cars were ordered, and not delivered, no right of action would arise, unless the orders were first accepted.

(4) That no suit could be maintained, based upon failure to deliver cars after termination of the contract, by reason of the fact that all orders undelivered at the expiration had been canceled by agreement of the parties.

[1] In disposing of this case we will proceed upon the assumption that when business men negotiate with each other, and reduce the result of their negotiations to writing, and speak of that which they execute as an agreement between themselves, that the purpose was to accomplish something. The instrument, if it is capable of such construction, will be so construed as to make all of its parts consistent and effective. So considered, it is very apparent that it was the intention of Dodge Bros. to sell motor cars to the Pegram Motorcar Company, and that it was the purpose of the latter to buy and pay for such cars, and to resell them. It is apparent that the latter had a right to buy, and this must carry with it the obligation of the former to sell. Any other conclusion would be in conflict with the language used:

"The manufacturer grants unto the dealer the right to sell Dodge Bros. motorcars and repair parts during the life of the agreement." "The dealer agrees to appoint associate dealers at all points in his territory." "The manufacturer will ship cars to the dealer with sight drafts against bill of lading attached." "To facilitate and expedite the adjustment of claims for shortages, the dealer agrees to make claims within ten days after the receipt of shipment." "The dealer authorizes the manufacturer to make shipments" in accordance with the schedule. "The dealer agrees to accept and pay for such motorcars as shipped, and will not cancel any motorcars in this schedule without giving the manufacturer 15 days' written notice, in which event the manufacturer will have the right to cancel a number of motorcars equal to those canceled by the dealer."

The language used, and other language in the agreement, is inconsistent with any theory other than that defendant undertook to sell,

and plaintiff undertook to buy and pay for, motorcars; and the schedule referred to indicates the number to be bought and the time when they are to be bought and paid for, unless modified by the timely action of the purchaser or the exercise of a reciprocal right on the part of the manufacturer. One of the provisions of the contract is to this effect:

"This agreement * * * may be canceled by the manufacturer or dealer upon 15 days' written notice."

The circumstance that the contract provides a method and time of cancellation carries with it the idea that there is something to cancel. Defendant insists that, inasmuch as this cancellation clause could have been exercised at any time within the life of the contract, the contract was thereby rendered nugatory. Even assuming that the cancellation clause could have been arbitrarily exercised without giving any consideration to expenditures made by either party, it is, nevertheless, a contract which would always be effective for at least the 15 days required for written notice. But defendant insists that, the contract having been made on July 29, 1914, and not providing for the delivery of any cars until October of that year, there was a period of more than 2 months when either party could have rendered the contract entirely nugatory by giving the 15 days' written notice.

It is a sufficient answer to this contention that no such action was taken between July 29 and October 1, 1914, and that, if the contract had no force prior to the latter date, the instrument being in existence at that time, and no action having been taken looking to its cancellation, it was effective from that time until the date of its expiration. But it is a mistake to assume that nothing could have been done under the terms of the contract during the period mentioned. The plaintiff was under obligations to purchase repair parts that would inventory at all times during the life of the agreement not less than $3,000. He not only had the obligation to purchase these repair parts, but he had the right to purchase them at a designated discount. The contract provided also for a deposit by him, and he was entitled to interest at 6 per cent. during the time of the deposit. According to the allegations of the petition, immediately upon the signing of the agreement the complainant began to make expenditures and to personally labor in carrying out its terms. The clause of cancellation quoted, while making his investment somewhat precarious, was at least warrant for such action until receipt of the notice provided for.

Even if it be assumed that the contract is one which, on account of its unilateral character, or for any other reason mentioned by defendant, could not primarily have been enforced, it determined the respective rights of the parties during the time both parties treated it as subsisting and effective; and the defendant, having permitted, without any effort to exercise its right of cancellation, the plaintiff to carry out his contract fully, must be held to have incurred a reciprocal obligation.

[2] The paragraph in which appears the date of expiration and the provision with reference to cancellation has also the following:

"The termination or cancellation of this agreement will immediately act as a cancellation of all orders received from the dealer for motorcars or parts which have not been delivered prior to date of cancellation."

It is insisted that, by virtue of the terms of this provision, when on June 30, 1915, the contract expired by limitation, this expiration resulted in a cancellation of the right of plaintiff to receive the cars named in the schedule. To give the clause quoted the effect contended for by defendant would be to give to a violation of the contract the effect of abrogating the results of a violation. This clause should be given such a construction as will make it consistent with the balance of the agreement. The schedule gives a definite right to the dealer to have shipped to him the 200 cars at times therein detailed. He had a right, on 15 days' written notice, to cancel any part of this schedule. If he exercised the right, a corresponding right arose upon the part of the manufacturer; but it was not exercised by either party. The specific provisions with reference to canceling, in the clause which contains the schedule, will be held to govern the schedule, even if such provision be in conflict with the general paragraph as to cancellation and expiration of the contract. If necessary to give effect to all parts of the agreement, it should be held that there was an obligation to deliver these 200 cars, entirely without reference to any order for cars, and to hold that on that account the quoted provision did not apply. A simpler disposition of the entire matter, however, would be to assume that the parties, having provided the time of the expiration of the contract, and having provided for its cancellation upon 15 days' written notice, intended to use the words "termination" and "cancellation," in the clause "the termination or cancellation of this agreement," as synonymous.

Again, it does not follow that because, under the terms of the contract, the order shall be regarded as having been canceled, that the legal consequences of a failure to furnish shall not result. The cancellation of the order could properly follow a failure to furnish within the time provided, and yet damages for failure to furnish survive.

The general demurrers to the petition should not have been sustained. The judgment is reversed, and the cause remanded for action in accordance herewith.

Reversed.


GRUBB, District Judge, dissents.