STUDEBAKER CORP. OF AMERICA v. WILSON.

(Circuit Court of Appeals, Third Circuit. January 21, 1918.)

No. 2257.

SALES ☞92—CONTRACT OF SALE—CONSTRUCTION.

A contract for the sale of motorcars to a dealer, who disposed of them to the trade, provided that either party might cancel the contract without cause on 10 days' written notice, and that termination should immediately cancel all unfilled orders, whether or not the time for shipment be past due. The contract further declared that defendant manufacturer should not be liable for damages, if for any cause it should fail or delay to make deliveries. The dealer, desiring to sell out his business, with the consent of defendant, which promoted the sale, canceled the contract, and the cancellation was accepted. *Held* that, though the cancellation was for the purpose of effecting an assignment of the contract, which was prohibited without defendant's consent, the dealer could not thereafter recover for defendant's failure to deliver him machines ordered prior to the date of cancellation.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Assumpsit by Orin S. Wilson against the Studebaker Corporation of America. There was a judgment for plaintiff (240 Fed. 801), and defendant brings error. Reversed.

Frank P. Prichard, Sheldon F. Potter, and Sheldon Potter, all of Philadelphia, Pa., for plaintiff in error.

J. B. Colahan, 3d, of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. The question involved in this case is the construction of a written contract. If the construction adopted by the court below was right, the verdict and judgment below should stand. If that construction is wrong, then the defendant's prayer for binding instructions in its favor was erroneously refused.

Turning to the contract in question, we find it was one providing for the supply by a manufacturer of automobiles in Detroit to an automobile dealer in Philadelphia. From this agreement, the material parts of which we hereinafter quote (see the margin [1]), it will be seen

[1] "This agreement, executed in triplicate at Detroit, Michigan, by and between the Studebaker Corporation of America, a New Jersey corporation, and Mr. Orin S. Wilson, of Philadelphia, Pa., hereinafter referred to as Company and Dealer, respectively, witnesseth:

"1. Subject to the conditions hereinafter expressed, Company hereby grants to Dealer the right, during the continuance of this agreement, to purchase from Company Studebaker automobiles (excluding commercial cars) for resale by Dealer within the following described territory, and none other, to wit: Philadelphia and Delaware counties, Lower Merion, Whitemarsh, Upper Dublin, Abington, Springfield, Cheltenham township in Montgomery county, including Boroughs of West Conshohocken, Conshohocken, and Ambler, all in state of Pennsylvania. Company agrees to protect Dealer in the right so granted to the extent that it will refer to Dealer inquiries for Studebaker

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*that, while it constituted Wilson a sole territorial agent for the manufacturer's goods, and fixed prices and terms of payment for all machines thereafter ordered, its general effect was to create a relation be-*

automobiles received by it from Dealer's territory, and except as hereinafter provided, will not knowingly sell its automobiles to other persons in Dealer's territory during the continuance of this agreement.

"2. *Dealer's Schedule Order.*—Upon execution of this agreement, Dealer shall give to Company a written order on the form of Company provided therefor, at the prices and discounts and subject to the warranty therein stated, for a sufficient number of automobiles to cover the estimated requirements of Dealer's trade in said territory for the automobile season beginning July 1, 1915, and annually thereafter at least one month before July 1st of each year, during the continuance of this agreement, shall give Company a like order covering Dealer's estimated requirements for the succeeding automobile season, all of which orders are and shall be a part hereof.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"16. *Reports of Sales and Prospects.*—At the end of each week during the existence of this agreement, Dealer agrees to forward to Company the names and addresses of all purchasers of Studebaker automobiles sold by Dealer during such week, with the model and serial number of each automobile sold, and shall respond promptly with all other information which Company may from time to time require, including the names and addresses of all persons making inquiry of Dealer relative to Studebaker automobiles, to the end that Company may, at its option, forward circulars and other advertising matter to such prospects.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"21. *Delays and Damages.*—Company will use its best endeavors to deliver Studebaker automobiles to Dealer in accordance with his orders, but if for any cause Company shall fail to make such deliveries or shall fail to make them within the time stated in the order, Company shall not be liable for any damages by reason of such failure to deliver or delays in making deliveries, nor for any loss of profits. Company shall not be liable for any damages or loss arising from the sale or use of automobiles sold under this agreement.

"22. *Assignment.*—This agreement and orders accepted hereunder constitute an entire, indivisible and personal agreement, and Dealer agrees *not to* transfer or assign the same or any part thereof without Company's written consent. It is further mutually agreed that the death, assignment or bankruptcy of Dealer during the existence of this agreement shall be considered as terminating the same without further action of Company.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"25. *Term and Cancellation Provisions.*—This agreement, when executed, shall supersede and annul all former agreements and orders between the parties hereto, relative to the sale of Studebaker automobiles, and the same shall become effective upon the 1st day of July, 1915, and continue and remain in force until canceled, it being mutually agreed that either party may cancel without cause upon ten days' written notice mailed to the other party: Provided, however, that for any violation hereof by either party, the other party may terminate this agreement immediately on mailed written notice. The termination or cancellation of this agreement, as herein provided, shall immediately cancel all unfilled orders whether or not time for shipment is past due for automobiles or parts thereof which may have been received by Company from Dealer, but nothing herein contained shall release Dealer from the payment of any sums which he may then owe Company for automobiles or parts delivered prior to such termination or cancellation. After the termination of this agreement, the sale of goods or the referring of inquiries by Company to Dealer shall not be construed as a renewal hereof, but any orders thereafter accepted by Company shall be governed by the terms and conditions of this agreement."

tween the parties which in reality neither obligated Wilson to order and buy any machines whatever from the manufacturer, nor did it obligate the manufacturer to deliver any machines to Wilson. Of course, if Wilson did not order any machines, the manufacturer had the right, and would naturally exercise it, to cancel and terminate the agreement. And if the Studebaker Company did not deliver machines Wilson ordered, the latter would naturally cancel the contract. If Wilson had scheduled his prospective sales at any number of machines, but did not see fit to order any deliveries, there was no provision in the contract by which the manufacturer, who had made machines to fill such prospective orders, could compel Wilson to take them. On the other hand, if Wilson went ahead and obtained any number of orders, and ordered machines to fill them, or if he ordered machines generally, there was no provision in the contract by which he could compel the manufacturer to deliver them.

Such was the anomalous condition these parties stipulated for themselves, for their agreement provided:

"Either party may cancel without cause, upon ten days' written notice, mailed to the other party," and "the termination or cancellation of this agreement, as herein provided, shall immediately cancel all unfilled orders, whether or not time for shipment is past due, for automobiles or parts thereof which may have been received by the company from dealers."

The parties continued to act under the agreement until October 11, 1915, when Wilson, in consideration of an advance forfeit payment of $500 made to him by one Colvin, gave the latter a seven-day written option to purchase his agency business for $13,250—"purchase price agreed upon by us as covering transfer of agency, good will, furniture, fixtures, cars and orders for cars now on our books, provided you accept the option to do so on or before October 18, 1915." The option also provided:

"The above-mentioned option and price are conditioned upon your obtaining from     the Philadelphia agency of said company, and further on your obtaining from the owner of the building in which I am now conducting business, a lease for a period of three years," etc.

The option further provided that in case of acceptance Wilson agreed "that all unpaid orders for cars hereafter taken over, as well as those now on hand, are to be turned over to you," etc.

As clause 22 of the agency contract provided that "this agreement and orders accepted hereunder constitute an entire, indivisible, and personal agreement, and dealer agrees not to transfer or assign the same or any part thereof without company's written consent," it is clear that if the contract continued in force Wilson could not fulfill the terms of his option without the company's consent. And as the option matured before the ten-day notice for cancellation expired, it is evident he could not cancel the contract in time to comply with the terms of the option. Such being the situation, it is equally clear that Wilson could only have entered into such an option agreement with the expectation of the cancellation of the contract and the termination of his agency and the acceptance by the Studebaker Company of Colvin as their agent. That such was Wilson's attitude is shown by the

steps he promptly took. By written addenda to their contract, Wilson and the company on October 12, 1915, waived the foregoing ten-day requirement of notice of cancellation, and stipulated as follows:

"Referring to clause No. 25 of said contract, it is hereby mutually agreed that either party may cancel said contract without cause, immediately, on mailed written notice, thus waiving the ten (10) day notice provided for therein."

Following this the contract was canceled in writing on October 25, 1915, which was done by Wilson writing, "In accordance with our understanding, on account of my selling my business to Mr. George E. Colvin, will you kindly cancel my contract as of to-day?" which request the company complied with by writing "Accepted."

Following such action, Colvin accepted the option, and Wilson, on October 25, 1915, in consideration of some $13,000 paid to him, conveyed to Colvin as provided in the option. Wilson also gave to the company his check for the balance he owed them on the contract. It is clear, therefore, that both the acts and writings of the parties accord with a construction of the contract which gave to either party the power to cancel this contract at any time and for any reason.

Having thus canceled the contract for his own purposes and paid the Studebaker Company the indebtedness he owed under the contract, Wilson, some weeks later, seems to have changed his views on the meaning of the contract, and brought this suit against the company to recover alleged damages for failure of the company to deliver to him certain machines ordered prior to November 1, 1915, the date the contract was canceled. It will be observed the contract, touching the right to cancel and the effect of such cancellation, provides:

"Company will use its best endeavors to deliver Studebaker automobiles to Dealer in accordance with his orders, but if for any cause Company shall fail to make such deliveries or shall fail to make them within the time stated in the order, Company shall not be liable for any damages by reason of such failure to deliver or delays in making deliveries, nor for any loss of profits."

In view of these provisions, viz. the right of cancellation, which was exercised by Wilson, and the contract exemption for all damages for machines undelivered at that time, we are of opinion no right of action was vested in Wilson when he brought this suit. He could only have such right because of a liability under the contract, and as the contract specifically provided that there should be no liability for damages in such case, and as the contract itself had been rescinded and canceled, no right of action was vested in Wilson when he brought this suit. Both the contract itself, the act of Wilson in canceling it, and the payment by him of an indebtedness to the company negative a construction of the contract which contemplates the existence of a claim for damages or its survival of the contract's cancellation. Such being the case, it follows the court erred in refusing the defendant's request for binding instructions in its favor, and in charging:

"As a matter of law there was a contract upon the part of the plaintiff to take, and upon the part of the defendant to deliver, the automobiles specified in that contract, and at the times at which they were to be furnished."

The case is therefore reversed.