*J. H. Tipton* and *Claude Payton*, contra.

---

NATIONAL SURETY COMPANY *v.* CITY OF ATLANTA.

1. Where, in response to an advertisement by a municipality for bids for the furnishing and delivery of coal for a period of twelve months, a bid is made to furnish a specified number of tons, and a contract is afterwards entered into for the delivery of so many tons per month at a given price and at a stated place, but it is expressly stipulated in the contract that the purchaser shall be at liberty at any time by a written notice to order a suspension of deliveries of the coal and to refuse to accept further deliveries, the element of mutuality is wanting in the contract.

2. Orders subsequently given by the purchaser for deliveries of a portion of the quantity included in the bid will not render the contract binding upon the bidder even for the delivery of the portion thus ordered. This is not an acceptance of the bid· as made.

3. There being no contract binding upon the principal, the bond for performance was not enforceable against the surety.

No. 1946. FEBRUARY 17, 1921.

Certiorari; from Court of Appeals. 24 *Ga. App.* 732.

The City of Atlanta brought suit against the National Surety Company, alleging a breach, on the part of the defendant as guarantor, of a bond guaranteeing to the plaintiff the performance of certain obligations assumed by the Tennessee and Southeastern Coal Company under an alleged contract between the coal company and the City of Atlanta, whereby the coal company

promised to furnish and deliver to the city coal in certain car-load quantities at certain intervals during a period of 12 months. The alleged contract provided that the coal company would furnish the coal upon orders of a designated officer of the city, and contained a provision for the suspension of deliveries of the coal under the contract upon written notice from the city. The petition set out the bond and the alleged contract between the coal company and the city, which was executed by both parties; and alleged a failure upon the part of the coal company to carry out its promises and undertakings therein contained, and that by reason of such failure the defendant breached the bond sued on, to the damage of the plaintiff. The petition contained two counts. The first count alleged the existence of a contract between the coal company and the city, by the terms of which the coal company was obligated to furnish coal to the city as above stated, and alleged a breach of the same by reason of the failure on the part of the coal company to perform, to the damage of the city, thereby constituting a breach of the bond. The second count alleged written communications from the city to the coal company from time to time throughout the year, ordering coal in small quantities, in accordance with the promises and obligations of the coal company as contained in the alleged contract, and the refusal and failure on the part of the coal company to furnish coal in compliance with such orders, to the damage of the city, thereby constituting a breach of the bond. The defendant demurred to the petition, upon the grounds that the alleged contract attached thereto was void for want of consideration; that it was lacking in mutuality, and fixed no binding obligation upon the city, and, there being no contract to be performed, there appeared no breach of the bond, which had been given to secure the performance of a contract which did not exist; and that the petition failed generally to set out a cause of action. The demurrer was overruled by the trial court, and this ruling was affirmed by the Court of Appeals. The case was then brought by writ of certiorari to this court.

*Little, Powell, Smith & Goldstein,* for plaintiff in error.

*J. L. Mayson* and *J. M. Wood,* contra.

BECK, P. J. (After stating the foregoing facts.) The statement of facts appearing above is substantially that made by the Court of Appeals in its official report. The demurrer setting

forth the contention that the contract was unilateral, and fixed no binding obligation upon the city, and was therefore lacking in mutuality, raised the question upon the determination of which depended the right of the plaintiff to a verdict in the case.

We agree with the Court of Appeals that the contract in the case was unilateral. The insertion in the contract of the stipulation contained in the 9th paragraph of the contract destroyed any quality of mutuality which might have existed in the contract had that paragraph been omitted. That paragraph reads in part as follows: " It is further agreed that the deliveries are to be made at the rate of five (5) cars per week to each station, or in quantities more or less as may be ordered by the General Manager of the Department of Waterworks of the City of Atlanta. All coal must be delivered in hopper-bottom cars. After verbal or written notice has been given to deliver coal under this contract, a further notice may be served in writing upon the contractor to make delivery of the coal so ordered within twenty-four (24) hours after receipt of said second notice. Should the contractor, for any reason, fail to comply with the second notice, the city will be at liberty to buy coal in the open market and to charge against the contractor any excess in price of coal so' purchased, over the adjusted price. After a verbal or written notice to suspend deliveries under this contract, a further notice may be served in writing to suspend deliveries of coal, and the city will be at liberty to refuse to accept any coal delivered after forty-eight (48) hours from date of such written notice."

If, independently of the part of the contract quoted, the city agreed to take the coal which the contractor by its bid offered to supply in response to the city's advertisement for bids, that portion of the contract just quoted left it entirely optional with the city to take or refuse to take the coal. A contract for the purchase of goods to be delivered in lots throughout a period of twelve months, which gives the purchaser the right at any time to serve notice upon the party contracting to deliver the goods to suspend deliveries, and stipulates that upon giving this notice to suspend deliveries the purchaser will be " at liberty to refuse to accept " any further deliveries after forty-eight hours from the date of such written notice, is not a contract binding upon the purchaser. If the purchaser can at pleasure cancel an agreement to purchase, he

has incurred no obligation; and to render a contract mutual, the obligation must be upon both parties.

Thus far we agree with the Court of Appeals. But we can not agree that where, subsequently, the city from time to time ordered the delivery of the coal which the contractor offered to supply at the stipulated rates, it thereby converted the contract into an obligation binding upon both parties. If before the offer to deliver the coal was withdrawn the city had closed with the offer of the contractor, accepting its proposal for the supply of coal, the mutuality in the contract, lacking as it stood, might have been supplied. But the mere ordering or the delivery of a part of the coal from time to time was not an acceptance of the bid of the contractor. This case differs in material particulars from the case of *Buick Motor Co.* v. *Thompson,* 138 *Ga.* 282 (75 S. E. 354). The contract relied on in that case, headed " Memorandum," was in the form of a letter from the motor company to a retail dealer, who afterwards sued the company for a breach of the contract; and was in the following language: " D. V. Thompson, Pelham, Ga. Until further advised, but not later than July 31, 1909, provided the handling of your business is not in conflict with policy of our company, the Buick Motor Company will, the conditions permitting, supply you with goods of its manufacture, herein described by letter and number (and more particularly described in its 1909 catalogue), at the following prices and terms." Then followed an itemized list of the cars, their model, price, and the quality. It was said in that case: " It was urged that the contract was unilateral; and that it did not bind the plaintiff to · buy, and accordingly did not bind the defendant to sell. Where mutual promises are relied on as the consideration to support a contract, the obligations of the contract must be mutually binding upon the respective parties. *Morrow* v. *Southern Express Co.,* 101 *Ga.* 810 (28 S. E. 998). This does not exclude the fact that one may, for a valuable consideration other than such mutual promises, bind himself by an option or offer to sell on certain terms during a specified time. In such a case he is bound to keep the offer open during the specified time, for the other party to accept or decline to buy. If acceptance is made within the time prescribed, the transaction then ceases to be a mere option or offer, and becomes a contract to sell and buy." And in conclusion it was held that the demurrer

of the defendant in the case was properly overruled. If in the present case the contractor had, in response to an advertisement calling for bids of such a character, offered to supply the city with coal of a certain character at a specified price per ton, or had offered to furnish, say, ten tons per month at a specified price per ton, and before the offer was withdrawn the city had ordered monthly so many tons, the acceptance of this offer would have made a binding contract upon the coal company, and it would have been bound to deliver. But in this case, where there was an offer to furnish twelve months' supply, some 18,000 tons, at a price stated, a specified number of tons to be delivered monthly, with the right reserved in the contract by the city to stop deliveries at any time, the subsequent orders for installment deliveries of coal did not impose an obligation on the bidder to deliver the installments thus ordered. The ruling in the case of *McCaw Mfg. Co.* v. *Felder*, 115 *Ga.* 408 (41 S. E. 664), is based upon facts essentially different from the present case.

We have therefore reached the conclusion that because of lack of mutuality in the contract it was not binding upon the coal company. And it then necessarily follows that as there is no valid contract binding upon the principal, the surety upon the bond given by the principal for the compliance with the contract would not be liable.

A decision of the constitutional question raised in the application for certiorari is unnecessary, in view of the foregoing; and moreover it was not made in the trial court.

*Judgment reversed. All the Justices concur.*