**FORD MOTOR CO. v. KIRKMYER MOTOR CO., Inc.**

No. 3454.

Circuit Court of Appeals, Fourth Circuit.

June 15, 1933.

NORTHCOTT, Circuit Judge, dissenting.

Wirt P. Marks, Jr., and Henry W. Anderson, both of Richmond, Va. (Menaleus Lankford, of Norfolk, Va., and Hunton, Williams, Anderson, Gay & Moore, of Richmond, Va., on the brief), for appellant.

Henry C. Riely, of Richmond, Va. (George B. White and McGuire, Riely & Eggleston, all of Richmond, Va., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and ERNEST F. COCHRAN, District Judge.

PARKER, Circuit Judge.

This is an appeal from a judgment for plaintiff in an action to recover damages for

breach of contract. The plaintiff was the Kirkmyer Motor Company, a corporation of Richmond, Va., engaged in the sale of automobiles. The defendant was the Ford Motor Company of Dearborn, Mich. Plaintiff alleged that defendant, to induce it to open a place of business in South Richmond, promised to award it a dealership in the "West End" of Richmond in the event it was decided to place an additional dealer there; that defendant did decide to place an additional dealer in the West End but, in violation of its contract, refused to award this dealership to plaintiff; and that plaintiff sustained damages as a result of this breach of contract in the sum of $75,000. There was a verdict for plaintiff in the sum of $21,202.92, being the cost of plaintiff's removal to South Richmond, improvements made on the building there occupied, and loss sustained on the lease of the building, which was taken for a period of seven and one-half years. From judgment on this verdict the defendant has appealed, assigning error in the refusal of the court to direct verdict in its favor, in the charge to the jury, and in the admission of testimony. In the view which we take of the case, it is necessary to consider only the assignment relating to the refusal to direct a verdict for defendant.

The facts are that from 1917 to 1929 plaintiff had operated in the city of Richmond as a dealer in products of the Ford Motor Company. From 1922 to 1929 its place of business had been in the "West End" of Richmond at 1301 West Broad street, where it had built up a lucrative business. In 1929 defendant desired a dealer in South Richmond and insisted that plaintiff move its business there. Plaintiff at first refused to move, but finally agreed to do so upon being told by defendant's agent that it would have to do so or lose its "franchise," and upon being promised that, if defendant placed an additional dealer in the West End, it would be awarded the dealership.

Plaintiff expended $1,153.42 in moving to South Richmond and $5,249.50 in fitting up a place of business there. It leased property for seven and one-half years at a rental of $400 per month, which was not worth exceeding $200 per month when it surrendered its contract with defendant on January 1, 1931. The business in South Richmond was not profitable, and plaintiff sustained losses of exceeding $12,000 for the time that it did business there in 1929 and of approximately $1,000 for the year 1930.

In June, 1930, defendant decided to place an additional dealer in the West End. The matter was taken up with plaintiff and an effort was made to dispose of its business in South Richmond so that it could take the dealership in the West End, but a purchaser for the South Richmond business was not found. Plaintiff offered to move its business from South Richmond or to operate the two places of business; but the agent of defendant would not consent to this, and, while plaintiff was still insisting on its right to the West End dealership, awarded this dealership to the Womble Motor Company.

Plaintiff and defendant were doing business while plaintiff was at West Broad street under a written contract dated January 2, 1929. After the removal to South Richmond a very similar contract was executed between them under date of January 2, 1930. The contract between defendant and the Womble Motor Company was dated July 9, 1930, and was in all respects similar to the 1930 contract between plaintiff and defendant. These contracts did not provide for the sale of any car or cars to the dealer, or fix prices to be paid for cars, but prescribed the terms and conditions under which defendant would sell automobiles to the dealer and the dealer would purchase them from the defendant and the things that were to be done so long as the dealer should continue to deal in defendant's products. It prescribed that sales made during the continuance of the dealership were to be upon the terms prescribed in the contract; that the defendant should have the right to sell to other dealers and direct to retail purchasers in any territory; that prices were to be the list prices fixed from time to time by defendant; that list prices should be subject to change at any time; that title should remain in the defendant until goods were paid for, etc. On the part of the dealer it was agreed that he should maintain a place of business, and only one place of business, suitably located and equipped and acceptable to defendant; that he should purchase and have on hand one demonstration car and truck in good condition; that he should obtain written orders from purchasers; that he should observe certain rules in selling repair parts, advertising, use of trade-marks, etc. Paragraph 9 of the contract contained the following significant paragraphs:

"(a) Dealer will furnish company on company's forms, prior to December 31 of each year, an estimate of the number of Ford automobiles, trucks, cabs and chassis which dealer will purchase from company during each month of the succeeding year, company agreeing to give careful consideration to such

estimates but expressly reserving the right to follow or depart from such estimates as in its discretion it may determine."

"(e) This agreement may be terminated at any time at the will of either party by written notice to the other party given either by registered mail or personal delivery and such termination shall also operate to cancel all orders theretofore received by company and not delivered at date of receipt of said notice.

"(f) This agreement is not assignable by dealer without written assent of company and no agent or representative of company is authorized to vary or modify the terms hereof, except by an instrument in writing executed by the parties hereto.

"(g) If, prior to the date hereof, a sales agreement shall have been in effect between the parties hereto, the company and dealer agree, each in consideration of release by the other from the obligations and rights thereunder existing, that such prior sales agreement is hereby terminated and cancelled and after the date hereof shall be governed and controlled exclusively by this sales agreement."

Contention is made that plaintiff is precluded from relying on the verbal contract with defendant's agents by paragraph 9(g) of the contract of January 2, 1930, just quoted. There is force in this contention, when it is remembered that plaintiff's contract with defendant was terminable at any time and that in the contract renewing the relationship in January, 1930, this provision was inserted, which not only terminated and cancelled prior sales agreements but also provided that "after the date hereof, all the rights and obligations of the parties hereto shall be governed and controlled exclusively by this sales agreement." To give effect to an anterior agreement that plaintiff should have rights with respect to the sale of defendant's products not embraced in this contract would seem clearly violative of this provision. And the position of plaintiff is not helped by testimony to the effect that the promise of the agent with respect to the West End agency was repeated at the time of the execution of the contract; for the contract itself under paragraph 9(f) gave notice that no agent of defendant had authority to vary or modify its terms except by an instrument in writing. See Fountain & Herrington v. Mutual Life Ins. Co. (C. C. A. 4th) 55 F.(2d) 120, 123, and cases there cited. And we are not impressed with the argument that the written contract contemplated that the fixing of the dealer's location should be by separate oral agreement; for the contract provided that the dealer should maintain a place of business acceptable to the company, not one fixed by prior agreement.

But we base our decision, not on this ground, but on the ground that the verbal contract upon which plaintiff relies, in so far as it relates to the sale of defendant's products to plaintiff, is lacking in mutuality and is entirely too indefinite to form the basis of a binding obligation on the part of the defendant. This contract was not one of sale, or of hiring, or of agency. Viewed in the light most favorable to plaintiff, it was nothing more than a conditional contract to sell goods to plaintiff in the future upon the terms and prices at which sales were made to other dealers, but without specifying the amount of goods to be sold or purchased. To say that the parties contemplated that plaintiff should be given a contract of the character that defendant was making with other dealers in 1930, such as it entered into with plaintiff in South Richmond or with the Womble Motor Company for the West End, does not help plaintiff's position; for this written contract does not obligate defendant to deliver a single car or truck and may be terminated at any time at the will of either party. It merely furnishes a basis upon which dealings are to be conducted; and, while it is a binding contract to the extent that it is performed, in that it attaches to and becomes a part of transactions entered into so long as it remains uncanceled (Willard, Sutherland & Co. v. U. S., 262 U. S. 489, 43 S. Ct. 592, 67 L. Ed. 1086) and imposes certain obligations as to how dealings shall be conducted, it imposes no obligation on defendant to sell or on the dealer to buy and furnishes no basis for recovery of damages if defendant refuses to sell.

It is well settled by the decisions that a written contract such as that awarded plaintiff in South Richmond or that awarded the Womble Motor Company, which does not bind the manufacturer to sell or deliver and which is terminable at will, imposes no liability on the seller if he terminates it or if he refuses to make sales to the other party. Curtiss Candy Co. v. Silberman (C. C. A. 6th) 45 F.(2d) 451, 452; Nebraska Aircraft Corporation v. Varney (C. C. A. 8th) 282 F. 608; Huffman v. Paige-Detroit Motor Co. (C. C. A. 8th) 262 F. 116, 117; Studebaker Corporation of America v. Wilson (C. C. A. 3d) 247 F. 403; Oakland Motor Car Co. v.

Indiana Automobile Co. (C. C. A. 7th) 201 F. 499; Velie Motor Car Co. v. Kopmeier Motor Car Co. (C. C. A. 7th) 194 F. 324. As was well said by Judge Hook in the case of Huffman v. Paige-Detroit Motor Co. which was stronger for plaintiff than the case at bar in that the dealer there was granted an exclusive right over certain territory: "The defendant did not obligate itself to sell, nor plaintiff to buy, any specified quantity of automobiles, nor was a determinable quantity fixed in a mutually binding way by the requirements of an established business. The defendant was expressly exempted from such an obligation and from adherence to the schedule of prices and discounts set forth. It was free to decline shipments under the contract, and also free to fix and change prices at will. The contract specified a time when it expired by limitation. The first count of the petition charged that prior to that time the defendant 'without just cause terminated and cancelled said contract.' But aside from the provisions above noted, indicating a lack of mutuality of obligation, the contract expressly reserved to defendant the right of cancellation when in its opinion the plaintiff was not working the territory to the best advantage. By another clause it was provided that, if the defendant 'believes that the dealer (the plaintiff) is not properly and diligently pushing the sale of its cars, it hereby reserves the right at its election, and without making itself liable in any manner for any claim or action for damages, * * * to cancel and terminate this agreement. * * * *' *It is quite manifest that the contract merely furnished a basis for future dealings to be observed no longer than was mutually satisfactory. There was no hard and fast commitment of either party, if he chose to break away.*" (Italics ours.)

The cases upon which plaintiff relies as establishing a contrary rule are not in point, for the reason that the contracts there involved were vitally different from that here under consideration. In Chevrolet Motor Co. v. Gladding (C. C. A. 4th) 42 F.(2d) 440, the court was of opinion that under the peculiar provisions of that contract there was an obligation upon the company to deliver a definite number of automobiles during the year, which might be terminated, not at will, but upon conditions specified in the contract. In Moon Motor Car Co. of New York v. Moon Motor Car Co., Inc. (C. C. A. 2d) 29 F.(2d) 3, 5, the cause of action for breach of the contract was sustained because of the existence of an exclusive right of sale within the territory granted the dealer and because the

right of cancellation could be exercised, not at will or for "just cause," but only for breach of the conditions of the contract. The court remarked, "The case is quite otherwise if the performance be dependent wholly on the promisor's pleasure, since in that case it binds him to nothing at all." In Ellis v. Dodge Bros. (C. C. A. 5th) 246 F. 764, there was no right to cancel at will but only upon fifteen days' notice, and the court interpreted the contract as binding the company to make delivery until there was a cancellation. In Buick Motor Co. v. Thompson, 138 Ga. 282, 75 S. E. 354, 355, there was an agreement to sell with right to cancel on ten days' notice, and suit was for failure to deliver cars ordered before there was any attempt at cancellation. This case was distinguished from one where there was a right of cancellation at will in the later case of National Surety Co. v. City of Atlanta, 151 Ga. 123, 106 S. E. 179. None of the cases relied on by plaintiff dealt with a situation where there was a right of cancellation at will on the part of the company and where the contract, as here, did nothing more than prescribe the terms and conditions upon which dealings would be had.

█ If, therefore, plaintiff had held a contract such as the Womble Motor Company held, it would have had no right to recover damages because the defendant terminated it or refused to make further sales and deliveries pursuant to its provisions. Is plaintiff in better condition because instead of having such a contract, it had a mere agreement that it should have one? The question answers itself. As pointed out above, the verbal agreement meant nothing more than that, if defendant decided to deal with anyone in the West End, it would deal with plaintiff. Taking the evidence in the light most favorable to plaintiff, i. e. that plaintiff in that event was to be given a contract such as the Womble Motor Company's contract, this meant nothing more than that the dealings which should be had were to be subject to the terms and the conditions therein expressed, with no obligation on the part of defendant to deliver any cars or do anything else. The question is: Does a general promise to enter into dealings with another under a contract looking to the sale and purchase of merchandise, but without any specification of the amount of goods to be sold, and with the right on the part of the seller to cancel at any time and refuse deliveries, constitute a binding contract for breach of which an action for damages may be maintained? It clearly does not.

Willard, Sutherland & Co. v. U. S., 262 U. S. 489, 493, 43 S. Ct. 592, 67 L. Ed. 1086; Atwater & Co. v. U. S., 262 U. S. 495, 43 S. Ct. 595, 67 L. Ed. 1089; United States v. White Oak Coal Co. (C. C. A. 4th) 5 F.(2d) 439, 441; Fitzgerald v. First Nat. Bank (C. C. A. 8th) 114 F. 474, 478; Cold Blast Trans. Co. v. Kansas City Bolt & Nut Co. (C. C. A. 8th) 114 F. 77, 81, 57 L. R. A. 696; A. Santaella & Co. v. Otto F. Lange Co. (C. C. A. 8th) 155 F. 719; Smokeless Fuel Co. v. W. E. Seaton & Sons, 105 Va. 170, 52 S. E. 829; American Agricultural Chemical Co. v. Kennedy & Crawford, 103 Va. 171, 48 S. E. 868; International Shoe Co. v. Herndon, 135 S. C. 138, 133 S. E. 202, 45 A. L. R. 1192.

The principle upon which the case of Willard, Sutherland & Co. v. U. S., supra, was decided is clearly applicable. In that case it appeared that the government's bid for coal provided that the contractor should furnish and deliver any quantity of the coal specified that might be needed, but that the government should not be obligated to order any specific quantity. It was held that the terms of the contract were binding as to deliveries made under it but that it was not otherwise enforceable, the court saying: "There is nothing in the writing which required the government to take, or limited its demand, to any ascertainable quantity. It must be held that, for lack of consideration and mutuality, the contract was not enforceable."

The rules applicable to the class of contracts where performance is conditioned upon the will, wish, or want of one of the parties, are thus ably stated by the late Judge Sanborn in Cold Blast Trans. Co. v. Kansas City Bolt & Nut Co., supra: "A contract for the future delivery of personal property is void, for want of consideration and mutuality, if the quantity to be delivered is conditioned by the will, wish, or want of one of the parties; but it may be sustained if the quantity is ascertainable otherwise with reasonable certainty. An accepted offer to furnish or deliver such articles of personal property as shall be needed, required, or consumed by the established business of the acceptor during a limited time is binding, and may be enforced, because it contains the implied agreement of the acceptor to purchase all the articles that shall be required in conducting his business during this time from the party who makes the offer. [Citing cases.] But an accepted offer to sell or deliver articles at specified prices during a limited time in such amounts or quantities as the acceptor may want or desire in his business, or without any statement of the amount or quantity, is without consideration and void, because the acceptor is not bound to want, desire, or take any of the articles mentioned. [Citing cases.] Accepted orders for goods under such void contracts constitute sales of the goods thus ordered at the prices named in the contracts, but they do not validate the agreements as to articles which the one refuses to purchase, or the other refuses to sell or deliver, under the void contracts, because neither party is bound to take or deliver any amount or quantity of these articles thereunder."

The fact that the promise of defendant to award plaintiff the West End dealership was of too indefinite a character to constitute a binding contract was demonstrated in the progress of the case in the attempt to arrive at the damages resulting from breach. It is quite significant that the only damages which it is suggested that plaintiff is entitled to recover consist in the cost of moving to South Richmond, the cost of equipping the building there, and the loss sustained on the South Richmond lease. But it is perfectly clear that none of these losses resulted from the refusal of defendant to award plaintiff the West End dealership. They resulted from the moving to South Richmond, which plaintiff agreed to do rather than lose his "franchise" and the hope of getting back into the West End again. If the removal to South Richmond had been accomplished by false and fraudulent promises and representations, these losses would have been proper elements of damage in a suit to recover for the fraud. Under no possible theory, however, can they be said to have arisen from the refusal of defendant to award plaintiff the West End dealership; for the measure of damages on breach of contract is what is required to place the injured party in the position he would have occupied had the contract been performed. Williston on Contracts, § 1338; Chicago, etc., R. Co. v. McCaull-Dinsmore Co., 253 U. S. 97, 100, 40 S. Ct. 504, 64 L. Ed. 801; Benjamin v. Hilliard, 23 How. 149, 16 L. Ed. 518. The special rule applicable upon anticipatory breach of a construction contract or one for the special manufacture of goods has, of course, no application here. In some cases damages cannot be awarded even though a contract has been breached, because they are purely speculative; but here the difficulty is that it is impossible to point to any definite thing which defendant entered into a bind-

ing agreement to perform, even if the dealership were awarded.

It appears that plaintiff has been disappointed in its expectations and has been dealt with none too generously by the defendant; but, while we sympathize with its plight, we cannot say from the evidence before us that there has been a breach of binding contract which would enable it to recover damages. While there is a natural impulse to be impatient with a form of contract which places the comparatively helpless dealer at the mercy of the manufacturer, we cannot make contracts for parties or protect them from the provisions of contracts which they have made for themselves. Dealers doubtless accept these one sided contracts because they think that the right to deal in the product of the manufacturer, even on his terms, is valuable to them; but, after they have made such contracts, relying upon the good faith of the manufacturer for the protection which the contracts do not give, they cannot, when they get into trouble, expect the courts to place in the contracts the protection which they themselves have failed to insert.

For the reasons stated, the judgment of the court below will be reversed.

Reversed.

NORTHCOTT, Circuit Judge (dissenting).

I am of the opinion that the judgment should be affirmed. It is undisputed that the agents of the defendant company made the promise to the Kirkmyer Motor Company as alleged in the declaration. It is undisputed that relying on this promise and the good faith of the agents of the defendant company, the plaintiff made certain expenditures and incurred certain obligations in preparing to conduct the agency in South Richmond. The promise to make the plaintiff an agent in West Richmond, if another agency was placed there, even though the contract of agency could be rescinded at will, was of sufficient value, or at least it was so considered by the plaintiff, to induce the expenditure made. The oral agreement was entirely separate and apart from the written contract with regard to the South Richmond agency. The oral agreement was broken by the defendant's agents without reason and while the president of the plaintiff company was protesting his willingness to do everything that might be required to secure the West Richmond agency. In wanton violation of the agreement entered into, an agent other than plaintiff was placed in West Richmond, the location from which plaintiff was forced to move, practically by coercion.

While the profits that plaintiff might have made from the West Richmond agency are perhaps too vague to be definitely ascertained, there is ample authority to the effect that plaintiff should be allowed to recover at least the expenditures made in reliance upon the promise. 17 C. J. 800; 8 R. C. L. 495, and cases there cited. The jury fixed this recovery in its verdict at $21,202.92. There was ample evidence to support this verdict.